(No. 13159.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH J. GREEN *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1920.*

1. CRIMINAL LAW—*when the record should be free from error.* To sustain a conviction depending upon the testimony of a self-confessed accomplice who is impeached by his own sworn testimony given on the preliminary hearing, the record should be free from material or substantial error.

2. SAME—*whether crime is infamous depends upon the statute.* Whether a particular crime is infamous depends upon the statute and not upon the common law or the court's view of the moral aspects of the offense.

3. SAME—*evidence of conviction for assault to commit robbery is not admissible to discredit witness.* Evidence that a witness was convicted of an assault with intent to commit robbery is not admissible to discredit his testimony, as that crime is not infamous under the statute.

4. SAME—*evidence that witness has been indicted is not admissible to impeach testimony.* A witness cannot be impeached by showing that he has been arrested and charged with crime, but it must also be shown that he was convicted.

5. SAME—*questions tending to prejudice defendants in minds of jurors are improper.* Questions which are asked for the sole purpose of prejudicing the defendants while they are testifying in their own behalf are improper, and the error is not cured where sustaining objections to the questions will not necessarily remove the prejudice thereby created in the minds of the jurors.

· WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

DESTEFANO & MIRABELLA, CHARLES C. WILLIAMS, and THOMAS E. SWANSON, (ROCCO DESTEFANO, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and LLOYD D. HETH, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The eight plaintiffs in error were indicted with Joseph J. Green for the burglary of a saloon in Chicago on June 3, 1919. The case came up for trial at the last October term of the criminal court, at which time Green was called as a witness for the State and manifestly it was mainly upon his testimony that plaintiffs in error were convicted, there being practically no evidence against six of the eight plaintiffs in error except the testimony of Green. All of the eight were convicted, and this writ of error is sued out to review the judgment of the trial court.

The evidence shows that about daybreak of June 3, 1919, the saloon of Fred A. Both, on Larrabee street, in Chicago, was burglarized and $3.75 taken from the cash register and preparations made to remove a barrel and a half of whisky; that the police having been informed of the attempted burglary arrived at the scene while the burglars were still in the saloon; that the burglars, having been given warning that the police were coming, all ran out of the saloon and disappeared down different streets and alleys. The police gave chase to these men, the number being uncertain, some saying three and some five, but all of the men who ran from the saloon escaped excepting Green, who was captured between two houses in an alley some little distance from the saloon. A wagon drawn by one horse was backed up to the saloon and the barrels of whisky had been rolled to the street door, preparatory to being put in the wagon, when the police arrived. The evidence tends to show that it was light enough when the police arrived at the saloon to see half a block away and that a person might possibly be identified some 400 or 500 feet distant, although there is some conflict in the evidence on this question. None of the plaintiffs in error were identified by any of the police as being the ones present at the saloon that morning, excepting plaintiff in error Rizzo, whom police officer Sul-

livan testified he recognized on the trial by his face and build as the man he had seen running around a corner some distance ahead of him. This testimony is not entirely satisfactory, as it was shown on cross-examination of this witness that it was quite dark at the time. There is no other evidence connecting any of the plaintiffs in error with the burglary, excepting certain statements made by the accomplice, Green, to the police officers and Green's testimony at the trial. The evidence also tends to show that on June 3 plaintiff in error Rizzo was arrested and while at the station was questioned by the police as to his participation in the burglary; that he denied any knowledge of it and was then confronted by Green. The police officers and Green testified that Green, in the presence of Rizzo, told about the burglary and said that Rizzo was there, and that Rizzo then said, "Let Green tell it; what Green says is true," while Rizzo and one of the other plaintiffs in error, Lisandrello, who claimed he was present at the alleged interview between Rizzo and Green and the officers, testified that Rizzo denied to the police the truth of Green's statements and denied any knowledge of the burglary. These witnesses also testified that Rizzo was beaten and kicked by the police, which testimony the police deny. The evidence also shows that some of the plaintiffs in error were not arrested or even charged with this crime until some time afterwards, although they continued to reside at their usual places of residence. The evidence also tends to show that on June 18 plaintiff in error Moretti was given a preliminary hearing on this charge before Judge Holmes of the municipal court and that Green was then called as a witness against him, testifying under oath in the municipal court that he did not know Moretti and that Moretti had nothing to do with the burglary of the saloon; that he had falsely told the police that Moretti and others of the plaintiffs in error had assisted in the burglary and was forced by them to implicate Moretti and others of the plaintiffs

in error. The evidence also tends to show that at the same time Green showed Judge Holmes a bloody handkerchief and his cap stained with blood, which blood he said came from him as a result of the police beating him to make him say that Moretti and the other plaintiffs in error were with him when the saloon was burglarized; that on account of Green's testimony Moretti was discharged on the preliminary hearing in the municipal court. Green on this trial apparently repudiated his testimony given before Judge Holmes on this preliminary examination and re-asserted what the police officers testified that he told them, to the effect that all the plaintiffs in error were involved in this burglary. The evidence also shows that after Green's arrest on this charge he confessed to the police that he had committed another burglary, in which he stated Lisandrello and two of the plaintiffs in error assisted him; that Lisandrello and the other plaintiffs in error so charged were arrested and Green testified in court against them, stating that he and they committed this other crime; that upon this testimony these men were held to the grand jury for the commission of said other crime. The evidence in the record tends to show that at the time Green testified that he, Lisandrello and the other plaintiffs in error committed the other crime Green was still in the army and was not in Chicago until several days thereafter. Green testified on this trial that he had lied to Judge Holmes on the preliminary examination as to Moretti because of threats of the other plaintiffs in error against him. There is no evidence, however, tending to show that he complained to anyone about these threats until long after he claimed they occurred. On October 17, about two weeks before this trial, he wrote a letter to police sergeant Quinn, who testified in this case, thanking him for money and cigarettes sent him and asking the officer to get him out on bonds. A few days later this police sergeant signed Green's criminal bond and took him to the East Chicago avenue police sta-

tion, where Quinn was stationed and where Green remained until the trial of this case, and he was furnished meals and cared for by Quinn while at said station.

Five of the plaintiffs in error testified during this trial and denied that they were in any way connected with this burglary. The other three plaintiffs in error, Gloriana, Calli and Petella, did not take the stand. · Plaintiff in error Giardinella called as a witness in his behalf Dr. Rongo, who testified that he had operated on Giardinella about April 15 and had continued treating him for that operation from December, 1918, to June, 1919. Giardinella testified that he was sick on June 3, 1919, not being able to walk at that time; that in June, 1919, he lived at 832 Milton avenue and was at home all the time; that he was not arrested until October. Plaintiff in error Moretti admitted that he owned a horse and wagon but said he was using it in peddling on June 3 and denied any connection with Green on that day. He testified that he was at home, sleeping, at the time of the alleged burglary, June 3, and was awakened by Mrs. Bender, to whom he was paroled on the day before the robbery, but the police records tend to show that on June 2 he was in the hands of the police. The evidence also tends to show that on June 3, and for a number of days afterwards, police officers went to the house of Giardinella to search for him and did not find him; that they also looked for Moretti from June 3 to July 13 before they could find and arrest him.

It is strenuously argued by counsel for plaintiffs in error that the evidence in this case was of a character that does not justify conviction; that the testimony connecting practically all the plaintiffs in error with the burglary in question was that of the self-confessed accomplice, Green, and that while a defendant may be convicted upon the uncorroborated testimony of an accomplice, yet such evidence must be weighed with extreme caution, particularly where the testimony of the accomplice is impeached by his own

sworn testimony given on another trial. (*Waters* v. *People,* 172 Ill. 367; *Campbell* v. *People,* 159 id. 9.) It is further argued that the evidence is of such an unsatisfactory character that there remains a grave and serious doubt of the guilt of the plaintiffs in error. It is unnecessary to pass on this question. We deem it sufficient to say that the evidence is of such character that the record, in order to sustain a conviction, should be free from material or substantial error. *People* v. *Jacobs,* 243 Ill. 580; *People* v. *Ahrling,* 279 id. 70.

Counsel for plaintiffs in error urge that the trial court committed error in permitting proof to be offered on behalf of the State, over objection, that plaintiff in error Rizzo had been previously convicted of the crime of assault with intent to commit robbery; that such conviction was not properly shown in the record; and more than that, that the crime was not infamous, and therefore, under the rulings of this court in *Bartholomew* v. *People,* 104 Ill. 601, and *Matzenbaugh* v. *People,* 194 id. 108, such conviction could not be shown to discredit a witness. It is conceded by counsel for the State that under paragraph 279 of the Criminal Code (Hurd's Stat. 1917, p. 1015,) the crime of assault with intent to rob is not specifically named as in the list of infamous crimes, but they contend that an assault with intent to commit a robbery is as depraved as an actual robbery, and that as the infamy of a crime depends largely on the state of mind, the crime of assault with intent to commit a robbery should be held infamous as well as the crime of robbery. We cannot so hold. Whether the crime is infamous depends not upon the common law or the court's view of its moral aspects but upon the statute, (*People* v. *Russell,* 245 Ill. 268,) and as the crime of assault with intent to commit robbery is not included in the statute as an infamous crime, therefore, under the statute, evidence of Rizzo being convicted of an assault with intent to commit robbery was erroneously admitted.

It is also urged that the trial court erred in permitting proof to be made by the State that plaintiff in error Lisandrello had been indicted seven times and the indictments were then pending against him. It was held in *People* v. *Newman,* 261 Ill. 11, that it was improper to compel a defendant to testify that he had been indicted for other felonies and that the indictments were then pending; that a witness could not be impeached by showing that he had been arrested and charged with crime; that in order to have such evidence admissible it should be shown that he was not only indicted but convicted. Counsel for the State admit this to be the law, but say that this case is entirely different as to its facts from the facts in *People* v. *Newman, supra;* that in this case this evidence was properly admitted as to Lisandrello in order to show that he was an interested witness. We cannot see that there is any distinction in this regard from the case of *People* v. *Newman, supra.* Under the reasoning of that opinion it must be held that admitting this testimony as to the indictment of Lisandrello was reversible error.

Plaintiff in error O'Malley was asked by the State: "You don't know when you were arrested in this case, do you?" and answered, "I don't exactly know the date; no, sir." He was then asked, "An arrest does not mean much in your life, does it?" Plaintiff in error Moretti was asked by the State: "You say you didn't meet Joe Green until the middle of May, 1919?" and answered, "Yes, sir." He was then asked, "You knew Joe Green at Pontiac, didn't you?" (Pontiac is the location of one of the penal institutions of the State.) These questions might greatly have prejudiced the witnesses in the minds of the jury, and it needs no citation of authorities to show that they were improperly asked, even though objections as to some of them were sustained. The questions were such that sustaining objections thereto would not necessarily remove the prejudice thereby created from the minds of the jurors.

The evidence as to the guilt of plaintiffs in error was of such a character that we cannot say that the errors heretofore referred to did not seriously prejudice all the plaintiffs in error.

Other questions are raised in the briefs which we do not deem it necessary to consider or decide.

For the errors indicated the judgment will be reversed and the cause remanded.           *Reversed and remanded.*