(No. 41156.— ▮▮▮▮▮▮)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PHILLIP DEAN ELDREDGE, Appellant.

*Opinion filed January 29, 1969.*

Earl R. Anderson, of Paris, appointed by the court, for appellant.

Earl R. Anderson, Attorney General, of Springfield, and Carl A. Lund, State's Attorney, of Paris, (Fred G. Leach, Assistant Attorney General, and Charles J. Gramlich, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

On April 14, 1965, defendant Phillip Dean Eldredge pleaded guilty in the circuit court of Edgar County to armed robbery and was sentenced to 10-30 years imprisonment. A *pro se* post-conviction petition was filed on April 14, 1967, to which was attached as an exhibit a transcript of the proceedings on the plea of guilty. Counsel was appointed, the petition amended by defendant and the State's motion to dismiss was subsequently allowed. From the order dismissing the petition this appeal is taken.

Defendant filed numerous *pro se* pleadings in the trial court post-conviction proceedings in which he was represented by appointed counsel of his own choice. In addition to the brief filed on his behalf by appointed counsel in this appeal, defendant has filed a *pro se* "reply brief". Numerous questions are raised regarding the constitutional validity of the trial court proceedings, and, while the trial court apparently considered the allegations of the post-

conviction petition insufficient to necessitate an evidentiary hearing, it is also apparent from the order of dismissal that the merits of the allegations were considered and determined by reference to the transcript.

Defendant was arrested and charged with the October 23, 1963, armed robbery of the Dari-Drive in Paris, Illinois. While in custody he confessed to the charge for which he was being held, and to 15 separate and unrelated offenses, most of which occurred in the Paris area, including 7 armed robberies, 4 burglaries, 2 criminal damage to property and 2 theft violations.

Defendant subsequently appeared in court with his appointed counsel, waived indictment and entered his plea. While it would unduly extend this opinion to quote the inquiries, explanations and admonitions of the trial judge to defendant, it is apparent from a reading of the record that the court carefully and clearly advised defendant of the nature and statutory definitions of the charge against him, reading and explaining the facts contained in the information, and asking defendant if he understood them. When defendant indicated he had made oral and written confessions, the court examined him at length during which defendant disclaimed and denied any threats, promises, coercion or inducement to confess. His rights to indictment by grand jury, to a jury trial, and to subpoena witnesses and documents, and the statutory minimum and maximum punishments were all explained in considerable detail. Repeatedly the court inquired whether defendant had any questions regarding the judge's explanations and admonitions. Each time defendant indicated he did not. It was indicated that defendant and his lawyer had conferred on a number of occasions, that defendant was satisfied with counsel's service, and that defendant did not desire any additional time for the purpose of further consultation. A plea of guilty was thereafter accepted. Judgment was entered thereon, and defendant's attorney then stated that defendant would not

seek probation because he did not feel he deserved it. The court questioned defendant about this and defendant personally stated that he wished to waive application for probation. At that time defendant's attorney indicated that he was ready to proceed with the hearing on mitigation. The State's Attorney stated that defense counsel and he had entered into an agreement whereby the State's Attorney would state certain facts rather than present evidence and "it's my understanding the stipulation is with the agreement of defendant himself." The State's Attorney then related the facts regarding the defendant's previous arrests and convictions, and defendant, when asked by the court, indicated the facts related were correct. The formal records of these convictions were not offered into evidence. The stipulation also contained the list of prior offenses as to which defendant had confessed or made incriminating admissions while in custody of police officials awaiting trial on the present charge. After the entire stipulation had been presented the court asked defendant, "Do you have any corrections, alterations or explanations that you want to make with reference to that?" The defendant answered, "No, sir."

Defense counsel then offered to place defendant on the stand. The court responded, "I would like to hear from Mr. Eldredge on the particular offense we're dealing with today." Defendant's testimony consisted of a statement of the facts of this offense. In response to questions from his attorney he agreed that he had previously indicated he did not wish his parents to take the stand even though he was aware that they were going to do so in his behalf. At the conclusion of the direct examination by defendant's own attorney the court questioned defendant. Defendant stated he had finished high school with average grades, had been employed at various jobs on farms and in factories since that time, and that during the past year he had been employed at the Bastion and Blessing Company. When asked by the court what he was trying to accomplish by this series of offenses

defendant responded that he "intended to benefit by these by getting money to get things that he had never had."

The State's Attorney cross-examined defendant, mainly as to the motive and reasons for defendant's participation in the separate, unrelated and uncharged offenses to which he had confessed while in custody. Defendant testified that he had participated in the armed robberies in order to obtain the money and other property which they yielded. When questioned about the garage burning, he responded that he selected the particular garage for no reason other than "he just wanted to do it out of pure meanness." Following a brief re-direct examination by defense counsel the court asked defendant if there was anything further he wished to tell the court in mitigation. Defendant's response was, "Well, only that I'm aware of the wrong I have done. I want to pay my penalty and have another chance, that's all." Thereafter, sentence was imposed.

Defendant's post-conviction petition is replete with conclusionary statements devoid of factual support. The petition is sufficient, however, to present what we understand to be the substance of his contentions: (1) That it was error to permit, in the aggravation and mitigation hearing, a showing of his prior record of convictions other than by an authenticated record thereof; (2) That he was "virtually unrepresented" at that hearing by his attorney's failure to object to the State's Attorney's statement regarding other uncharged crimes to which defendant had confessed; (3) That consideration in that hearing of defendant's prior felony conviction was improper because his plea of guilty to that 1960 conviction had been coerced, and, in any event, its consideration in imposing sentence in the present case was a violation of the double jeopardy prohibitions of both the State and Federal constitutions.

The judge who dismissed the post-conviction petition did so only after consideration of the transcript of the 1965 pre-sentencing hearing. He clearly concluded an evidentiary

hearing upon the petition unnecessary in view of the contents of the transcript. With this conclusion we agree.

Our recent opinion in *People* v. *Adkins,* Docket No. 41387, is highly relevant here and we consider it to be dispositive of much of defendant's argument. We there indicated the substantial differences in the rules of evidence applicable to proceedings involving determinations of guilt or innocence and those determining the character or extent of punishment, quoting *Williams* v. *New York,* 337 U.S. 241, 247, 93 L. Ed. 1337, 1341, 69 S. Ct. 1079, 1083, that "modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." While we emphasized in *Adkins* the necessity for the sentencing judge to ascertain the accuracy of the information submitted, no problem exists here in that respect for defendant's counsel stipulated to the introduction of the matters now objected to and defendant himself verified their correctness. See, also, *People* v. *Johnson,* 28 Ill.2d 531, 534; *People* v. *Mann,* 27 Ill.2d 135, 139; *People* v. *Grabowski,* 12 Ill.2d 462, 466; *People* v. *Riley,* 376 Ill. 364; *People* v. *Popescue,* 345 Ill. 142.

The arguments of defendant as to which *Adkins* and the cases above cited are not completely dispositive relate to the alleged incompetency of counsel and the use of defendant's prior felony record. It should be noted that our statute expressly authorizes inquiry into the defendant's prior criminal record at the hearing on mitigation and aggravation. (Ill. Rev. Stat. 1965, ch. 38, par. 1—7(g).) While such statutory authorization is by no means conclusive as to the constitutionality of the practice, we know of no case which has considered information as to a defendant's prior criminal record to involve a double jeopardy problem when introduced at a pre-sentencing hearing. The authorities are clearly and uniformly to the contrary. See,

*Spencer* v. *Texas,* 385 U.S. 554, 559-560, 17 L. Ed. 2d 606, 87 S. Ct. 648, 651; *Oyler* v. *Boles,* 368 U.S. 448, 451, 7 L. Ed. 2d 446, 82 S. Ct. 501, 503; *Williams* v. *Oklahoma,* 358 U.S. 576, 3 L. Ed. 2d 516, 79 S. Ct. 421; *Gryger* v. *Burke,* 334 U.S. 728, 732, 92 L. Ed. 1683, 68 S. Ct. 1256, 1258; *Graham* v. *West Virginia,* 224 U.S. 616, 56 L. Ed. 917, 32 S. Ct. 583, 585; *McDonald* v. *Massachusetts,* 180 U.S. 311, 45 L. Ed. 542, 21 S. Ct. 389; *Moore* v. *Missouri,* 159 U.S. 673, 40 L. Ed. 301, 16 S. Ct. 179.

Nor do we find in this record any corroboration what-soever for defendant's claim that trial counsel was incompetent. It is apparent that counsel and defendant had consulted repeatedly prior to the waiver of grand jury and plea of guilty, and that defendant understood the seriousness of his position. It seems clear that submission to the sentencing judge of the numerous other serious crimes to which defendant had confessed was part of a plan whereby prosecution of the one armed robbery in Edgar County and consideration by the sentencing judge of the other admitted offenses would be looked upon by both the State and defendant as a practical substitute for separate prosecution of the other charges in Edgar and nearby counties. While there is in this record no statement of this purpose, our conclusion that such was true is bolstered by the fact that apparently there have been no prosecutions on the other charges in the ensuing 4-year period. This practice of "closing the books" on charges if the facts regarding them are brought to the attention of a sentencing judge in another case is common and known to the bench and bar throughout this country. It is recognized by the American Bar Association Special Committee on Minimum Standards for the Administration of Criminal Justice in its tentative drafts of Standards Relating to Sentencing Alternatives and Procedures (par. 5.2a and b) and Pleas of Guilty (par. 1.2). As noted in the commentary on these standards it is ·

usually preferable to have one judge impose sentence on all the offenses at one time. The benefits to defendant are substantial: The "slate is wiped clean" upon his release from prison; he avoids interstate detainers against him while imprisoned; and he may benefit from concurrent sentences. There are additional advantages to society in a single disposition of multiple offenses for no meaningful rehabilitation program is feasible when there are unresolved criminal charges pending which may result in unknown periods of future imprisonment. Our own statute now in force (Ill. Rev. Stat. 1967, ch. 38, par. 113—7) recognizes the practice as to crimes committed in more than one county of this State.

There is no conclusion to be drawn from the record before us other than that defendant knowingly, voluntarily and intelligently participated in a disposition of this case which also resolved a very substantial number of other charges against him. The formal methods of accomplishing this purpose now provided by our statute and those suggested by the A.B.A. tentative drafts are certainly preferable, since they provide a more precise bar to subsequent prosecution of the other offenses considered by the sentencing judge and eliminate any possibility of double jeopardy problems. But, in the absence of our present statutory provisions at the time this case was heard, it is unfair to trial counsel to now characterize the unobjected-to admission of evidence of other offenses as a demonstration of his incompetency, as defendant in his *pro se* brief does. This contention is completely devoid of merit.

The *pro se* contention that counsel at the hearing in mitigation and aggravation should have required production of the authenticated record of defendant's prior felony conviction borders on the nonsensical. The conviction had occurred several years earlier in the same court; its existence was verified by defendant; and to now argue that counsel

should have objected to proof of its existence by any means other than the record and that his failure so to do demonstrates incompetence is ridiculous.

Defendant's final contention, *viz.*, that his plea was involuntary because he was not advised of the consequences of his plea, must fail on two grounds. First, the record shows that in no less than three instances, the court explained and admonished the defendant as to the minimum and maximum sentences which could be imposed and the defendant replied that he understood the possible penalties. He now argues that it was not specifically explained to him that the minimum punishment could be greater than one year. We have examined the several statements of the court relating to the possible penalties and believe them to fairly warn and advise the defendant as to the statutorily prescribed punishment. Secondly, this question was not raised in the trial court post-conviction proceedings, and it may not be raised now. Ill. Rev. Stat. 1965, ch. 38, par. 122—3; *People* v. *Clements,* 38 Ill.2d 213, 216; *People* v. *Heirens,* 4 Ill.2d 131, 134; *People* v. *Lewis,* 2 Ill.2d 328, 330-31.

The judgment of the circuit court of Edgar County dismissing the petition is affirmed.

*Judgment affirmed.*