THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD SCHLEYHAHN, Defendant-Appellant.

(No. 11414;

Fourth District—April 6, 1972.

John F. McNichols, of Defender Project, of Springfield, (J. Daniel Stewart, of counsel,) for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (D. Bradley Blodgett, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant pleaded guilty to burglary and moved for probation. Before the entry of the plea, being one count of a four count indictment, the Assistant State's Attorney stated that he had had conversations with counsel for defendant with regard to other charges pending against him, including "an armed robbery and burglary", for which he had not been indicted "but which we had proposed to indict him on this week", and the same was true as to a "felony theft charge" then pending and proposed that the State would not proceed to prosecute on those charges in the event of a plea, but that they would present evidence on "these other charges and Counts II, III and IV" "in any hearing on probation or hearing on aggravation and mitigation" of the Count I burglary. He told the court that he understood that counsel had no objection to a presentation of such evidence "as the People might have with regard to other alleged offenses" in any such hearing, and upon inquiry from the court as to the correctness of the statement, counsel responded that such was correct, that he had "communicated that conversation to the defendant", and that he (counsel) understood that they "intend to use the other pending charges in aggravation and mitigation or an (*sic*) objection to the probation hearing, whichever it may be". Thereupon the court inquired very particularly of the defendant as to whether that was "agreeable to you?" with the response that it was, "Yes, Your Honor". Counsel then announced that they intended "to deny all of the things which are thus pending, and of course, we will get into a hearing at that time as to the merits". The plea was then accepted (after due admonishment) and the cause continued with a reference to the probation officer for investigation and report.

At the hearing on the motion for probation and/or in aggravation and mitigation, extensive evidence was presented by the State as to the various other offenses. Such witnesses were diligently cross-examined and defendant presented witnesses in his own behalf as to his character and aptness for probation consideration. Also, as to one of the offenses, he produced alibi witnesses. Defendant testified as to the details of the indictment offense and denied all of the other offenses testified to. He

had been convicted previously for theft under $150.00. Following closing argument, the court observed that "this is somewhat of an unusual proceeding as much as the defendant has pleaded guilty to the crime of burglary and by stipulation between the State's Attorney's Office * * * and the defendant and his counsel * * * it was agreed that the State could present evidence of other crimes in either aggravation or opposition to defendant's motion for probation". Thereafter followed a recitation of the evidence as viewed by the court and that it "will treat the evidence that it has heard today as evidence on the motion for probation and evidence in aggravation and mitigation" and sentenced the defendant to a term of seven to twenty-five years.

■■ Defendant now argues that the court failed to protect him against the possibility of double jeopardy by sentencing him "for alleged offenses for which there were no criminal charges"; that the court erred in considering evidence of other offenses without informing him "of any of the rights he would have at separate trials on these offenses"; that he was improperly sentenced because the alleged offenses at the sentencing hearing were not proved beyond a reasonable doubt; that there was improper identification of defendant with regard to one of the alleged offenses and that in one instance the court exercised a function of the State's Attorney by observing that as to one offense it was of a lesser degree than that urged. Reversal and remandment is now sought "for a proper sentencing hearing". In his reply brief, defendant argues the corollary of a remandment, that the sentence is excessive if the improper evidence is excluded and that we should reduce the sentence or order a "new sentencing hearing".

■■ The argument that he is still in jeopardy can be disposed of quickly. In the first place, the argument is based on a supposition. No formal charges based on those heard have been brought but, more important, this constitutional issue is not really present, "unless and until a formal attempt is made to prove those crimes in a direct attempt to obtain a conviction for them." (*People v. Fickes*, 89 Ill.App.2d 300, 231 N.E.2d 602.) As we noted there, we need not "speculate on some possible future proceeding". Furthermore, such seems to be unlikely in the extreme, indeed, almost an unseemly speculation, in view of the statement in the brief for the People that a "reasonable interpretation of the plea agreement between the People and defendant that by introducing evidence of the misconduct by the defendant at the hearing in aggravation and mitigation the People had agreed to foregoing the filing of formal charges against the defendant and prosecution of them"—and "the agreement was a practical substitution for the separate prosecution of these charges" and finally this clincher of double-riveted forbearance, "'This

fact alone would protect the defendant from double jeopardy problems". Furthermore, the recent opinion of the *United States Supreme Court in Santobello v. New York*, 30 L.Ed.2d 427, makes it perfectly clear that the disposition of criminal charges by agreement between the prosecutor and accused must be attended by safeguards and that when a guilty plea rests in any significant degree on a promise of the prosecutor, so that it could be said to be part of the inducement, such promise must be fulfilled. Accordingly, if the People say that a reasonable interpretation of the plea agreement was that there would be no prosecution of the offenses evidenced in the hearing in mitigation and aggravation—there will be none, and if there is, *Santobello* will stand as an inexorable bar.

The procedure followed finds its blessing in *People v. Eldredge*, 41 Ill.2d 520, 244 N.E.2d 151:

"* * * It seems clear that submission to the sentencing judge of the numerous other serious crimes to which defendant had confessed was part of a plan whereby prosecution of the one armed robbery in Edgar County and consideration by the sentencing judge of the other admitted offenses would be looked upon by both the State and defendant as a practical substitute for separate prosecution of the other charges in Edgar and nearby counties. While there is in this record no statement of this purpose, our conclusion that such was true is bolstered by the fact that apparently there have been no prosecutions on the other charges in the ensuing 4-year period. This practice of 'closing the books' on charges if the facts regarding them are brought to the attention of a sentencing judge in another case is common and known to the bench and bar throughout this country. * * * The benefits to defendant are substantial: The 'slate is wiped clean' upon his release from prison; he avoids interstate detainers against him while imprisoned; and he may benefit from concurrent sentences. There are additional advantages to society in a single disposition of multiple offenses for no meaningful rehabilitation program is feasible when there are unresolved criminal charges pending which may result in unknown periods of future imprisonment * * *.

There is no conclusion to be drawn from the record before us other than that defendant knowingly, voluntarily and intelligently participated in a disposition of this case which also resolved a very substantial number of other charges against him * * *."

This last statement from *Eldredge*, seems to us, to provide an additional reason for rejecting the jeopardy argument—in addition to its nonexistence under *Fickes* and the bar of *Santobello* permitting its existence. In short, the parties here agreed to precisely what happened. The argument of defendant that his acquiescence was not intelligently

made, *i.e.*, he didn't know his options, seems to us a thin reed to hang on in our context. Not only was he specifically queried by the judge with his answer in the affirmative, but the statement by his counsel and the Assistant State's Attorney that other offenses on the hearing would be explored and denied by him is something of easy grasp. So far as the plea of guilty to the single count, the court more than adequately fulfilled its responsibility of a meaningful inquiry and statement of all of his rights, options and alternatives. Furthermore, defendant, via his counsel, actively engaged in the hearing, cross-examining witnesses, and as we have seen, he took the stand and denied the perpetration of the other offenses and produced witnesses.

We conclude that defendant and his counsel were offered by the State an opportunity of "wiping the slate clean", and they understandably agreed to accept this offer. Naturally, the sentence of seven to twenty-five years must have been something of a disappointment, to put it mildly. But it is pertinent to note too, that prosecution on all of the pending charges might have culminated in sentences far in excess of the one received.

■■ While we would go slow in sanctioning the procedure in this case absent the 'stipulation', still, a great deal of what was admitted here seems to have previously received the sanction of our Supreme Court. The cases are replete with statements to the effect, the more a judge knows about a defendant, either on a probation hearing or one in aggravation and mitigation, the better for all concerned. 'Knowing'—in this context certainly encompasses the idea of prior conduct, and particularly conduct out of the ordinary—call it what you will, bizarre, criminal, alcoholic, perverted, reprehensible, obnoxious, etc., etc. The absence of such is likewise an important, albeit unproven, facet too of 'knowing' the defendant. To exclude conduct that is 'criminal', but to admit proof of conduct amounting to something less, is self-defeating, if, as we have said, the more the judge knows the better. The so-called *Adkins* rule provides, we think, authority for what we have just said and what in fact occurred here. (*People v. Adkins*, 41 Ill.2d 297, 242 N.E.2d 258.) *Adkins* stands for the proposition, quintessentially correct, we think, that a sentencing judge should have the "fullest information possible concerning the defendant's life and characteristics", and in commenting upon this, *Adkins* says in acquiring such, the court should not "be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." Thus because of *Adkins* we can say here in affirmance that not only are the limits of what the judge should know very delimited, but how he knows it is too—as well as the quantum.

Therefore, the argument as to identification, and requirements of proof beyond a reasonable doubt, are really foreign concepts in this type of hearing. Only recently (January 1972) the Supreme Court of the United States in *U.S. v. Tucker*, 30 L.Ed.2d 592, had this to say in a like context:

"It is surely true, as the government asserts, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come * * *."

Naturally what one sitting in such a hearing should hear or have presented for his consideration is subject to the parameter of reasonableness—outlandish and baseless statements should be ignored, but in saying so, is not to rule out all reasonable routes of acquiring information. For example, hearsay testimony is appropriate, reasonably confined, hence a "rap sheet", can have its uses. *People v. Dennis*, 47 Ill.2d 120, 265 N.E.2d 85:

"It has been held by the Appellate Court that information relating to prior convictions contained in such a 'rap sheet', even though hearsay, may nevertheless be considered during the hearing in aggravation and mitigation, where strict evidentiary rules are not applicable. (*People v. Forman*, 108 Ill.App.2d 482, 247 N.E.2d 917.) We concur with that view."

It is hard to see how a court, paraphrasing *Adkins*, and its quote from *People v. McWilliams*, 348 Ill. 333, 180 N.E,. 832, may look for the facts of the crime itself and may search anywhere within reasonable bounds for other facts which tend to aggravate or mitigate the offense and may inquire into the general moral character of the offender, his mentality, his habits, his social environment, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and know something of his life, family, occupation and record, *but* must exclude from such search, look and inquiry any conduct which can be charaterized as criminal. In *Adkins*, the court noted too that there, as here, there was no objection to what it heard. We would therefore have to say, that some acquiescence either by 'stipulation' or failure to object as in *Adkins*, is a precondition to the admission of other offenses *qua* offenses and for that purpose only, for as we read *Adkins*, other offenses, particularly of a serious nature, could be characterized as information from which a court should "shield itself from what might be the prejudicial effect of improper material". The argument that the court usurped the prerogative of the State's Attorney in observing that certain proof didn't live up to expectations so far as

the degree of crime is concerned, seems to us to have no bearing whatsoever in our context. Defendant confuses constantly the requirements of a formal charge and trial concerned solely with the determination of guilt and with what happened here, a hearing which was totally unconcerned with guilt, but rather with what the proper sentence or disposition should be.

In conclusion, it seems to us that the parties here acted most circumspectly, and indeed wisely, under the circumstances. With multiple offenses, some of a serious nature, hanging circumambient in the courtroom air, what better than to dispose of all of them at one hearing relating to sentencing on a finding of guilt as to one. What the court heard and believed was relevant to the sentencing process. We can not only not find error in what occurred, but commend that which did occur here as a model to be followed—assuming, of course, acquiescence in such procedure by the defendant. As we have said, the court did not abuse its discretion in proceeding as it did and in believing what it heard—that being so, the sentence on the charge of burglary in the context of conduct disclosing other offenses committed by defendant is not excessive and the request for reduction is accordingly refused.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.