THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEPHEN K. HAMPTON, Defendant-Appellant.

(No. 11459;

Fourth District—May 8, 1972.

222

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, (Jon Baxter, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On July 9, 1970, Defendant-Appellant, Stephen K. Hampton, was indicted for burglary of the residence of Mr. and Mrs. Norman White. The Public Defender was appointed as counsel for defendant. Trial before the jury was commenced August 17, 1970, and resulted in a verdict of guilty. Defendant was sentenced to an indeterminate term of 8 to 24 years.

On returning to their home on the evening of July 2, 1970, Mr. and Mrs. White discovered that a burglary had occurred and the Sheriff of Macon County was called. Missing was a combination stereo AM-FM radio, Mrs. White's purse, some antique jewelry and Mr. White's wedding ring. The ring was engraved with the couples' initials and the date of their wedding.

Shortly before noon, on July 2, 1970, Trooper Rogers observed the defendant operating his automobile in the City of Decatur with no license plates, stopped the defendant and asked to see his driver's license. Defendant produced a license which had expired, and was then arrested for driving with the expired license. The Trooper told defendant that he would have to post bond and escorted him to the Court House. Defendant parked his car, locked it and went to the Clerk's office with Trooper Rogers. The defendant, in the presence of Rogers, had taken several rolls of coins from his car for use in posting bond, and had asked Rogers if he would like to purchase any of the coins, mentioning that he had some Jefferson nickels. Rogers declined.

While defendant was arranging to post bond, Trooper Rogers talked to Detective Davis of the Decatur Police Department who had been engaged in investigating a series of burglaries which had occurred in the Decatur area. Among those burglaries was one committed at the residence of an army officer, Lt. Blank, and one committed at the residence of a Mr. Dollahan. In the Dollahan burglary a coin collection had been stolen, included in which was a complete set of Jefferson nickels. Trooper Rogers was apparently aware of Davis' investigation of the Dollahan burglary, and with some of the details of that offense, because he advised Davis of Hampton's possession and intended use of the several rolls of coins, and of the defendant's offer to sell him some Jefferson nickels, and also told Davis that some of the coins which Hampton had were similar to those taken from the Dollahan residence. Davis was aware that Hampton resided in an apartment building owned by Dollahan, was familiar with his police record and that he was a suspect in that crime.

Davis then went to the Clerk's office and asked defendant to accompany him to headquarters to discuss the coins which the defendant had posted as bond. The defendant testified that Davis told him that

he had some questions about burglaries and that he went with Davis willingly. Upon arrival at headquarters Detective Davis advised defendant of his rights under *Miranda v. Arizona,* 384 U.S. 436. As evidence of this, during the hearing to suppress the evidence and defendant's confession, People's Exhibit 7 was admitted. This was a written acknowledgment and waiver of the warnings, it was dated July 2, 1970, at 1:00 P.M. After each warning defendant affixed his initials and also signed the instrument at the bottom of the page. Davis told defendant he was a suspect in several burglaries and requested permission to search his car. Defendant denied knowledge of any burglaries and consented to the search of the car and executed a written consent (Peoples' Exhibit 8) dated July 2, 1970, at the hour of 1:15 P.M., and gave the keys to Davis.

Detective Davis and Officer Myers then searched the car and discovered four rings in the pocket of a pair of jeans which were lying on the back seat. One of the rings was that of Mr. White, engraved as above indicated. They also found a lighter upon which was engraved "Lt. Blank" plus a date, a company and battalion designation. Defendant was then booked for the Blank burglary.

On the afternoon of same day, defendant was asked to consent to a search of his apartment, and again executed a written consent which was introduced into evidence during the hearing on the motion to suppress, as Peoples' Exhibit 10. The consent was dated July 2, 1970, at the hour of 4:35 P.M., and was signed by the defendant. The defendant accompanied Officers Stoltz, Applegate, Brown and McMinn to his apartment. The search yielded the stereo radio taken from the White residence, plus Mrs. White's purse which contained her Social Security identification card, her driver's license, and the balance of the jewelry taken from the White residence was also found. The search also yielded many other items subsequently identified as having been taken during the course of other burglaries.

At 9:00 o'clock P.M., defendant was again questioned, was granted permission to call an attorney and did so. He then, according to the police confessed to some 14 burglaries but did not mention the White burglary. The following day defendant was again advised of his rights under *Miranda,* executed another acknowledgment and waiver of those rights and this document was introduced as Peoples' Exhibit 11, dated July 3, 1970, at 11:10 P.M. At 11:30 P.M., defendant signed a confession, made in his own handwriting. In the confession, Peoples' Exhibit 12, defendant admitted only the White burglary, the taking of the stereo-radio and Mrs. White's purse but denied taking anything else and stated that Hampton was alone at the time.

During the hearing on the Motion to Suppress the officers testified that

the defendant was not mistreated, no promises or threats made to him and that the acknowledgments, waivers, consents and confession were given freely and with no compulsion or inducements. The defendant testified that he had read all of the documents before signing them, that his consent to search the car was voluntary, that he was never mistreated. He also testified that he was threatened with a beating, that he was frightened and that some of the documents were executed at an hour different than indicated on the exhibit; the officers testified that the time shown was correct. The trial judge denied the motion to suppress the physical evidence and the confession.

During the trial the defendant testified that he had purchased the stereo-radio on June 28, 1970, from a stranger whom he met in a bar; that the man said his name was Wikoff. That Wikoff had refused to tell the defendant where he lived, and had delivered the stereo in a pickup truck which had the words "Decatur, Illinois" painted on the side, but no person's name was painted on the truck. He denied telling the police he had stolen the stereo-radio. Defendant testified that he found the White ring and Mrs. White's purse in the radio where records were kept. That he assumed the initials "W" referred to Wikoff and had put the ring in his pants pocket and had been trying to find Wikoff to return it to him. That he had looked at Mrs. White's driver's license, which was in the purse and had looked in the phone book but found no telephone listed in the name of Mrs. Nancy White. He denied burglarizing the White residence. The defendant was the only witness in his own behalf.

In rebuttal the People offered in evidence the record of defendant's conviction, on a plea of guilty on March 29, 1968, of the crime of theft of "Lawful coinage of the U.S., face value $2700.00 * * *." There was no objection by defendant's counsel, and the evidence was admitted.

■■ Defendant argues that counsel should have objected to admission of the record of this conviction, and that its admission was error. It is, of course, clear that a previous conviction of a crime, for purpose of impeachment, may be shown only if that conviction was for an infamous crime, (e.g., *People v. Helm*, 40 Ill.2d 39, 45, 237 N.E.2d 433), and the People do not dispute this well established rule. In Ch. 38, Sec. 124—1, Ill. Rev. Stats., 1969, the legislature has designated those crimes which fall into this category including "* * * theft if the punishment imposed is imprisonment in the penitentiary." Defendant now argues that since defendant was admitted to probation following his conviction for theft over $150.00 and not sentenced to the penitentiary, the conviction was not for an infamous crime. The defendant cites no case which supports his position on this point.

In *People v. Andrae*, 295 Ill. 445, 129 N.E. 178, the Court held that

release on probation did not set aside the defendant's conviction nor preclude admission of the record for the purpose of his impeachment in a subsequent trial. In *People v. Rave*, 364 Ill. 72, 3 N.E.2d, 972, the Court held that admission to probation does not, in any way, vitiate the conviction, and in *People v. Rave*, 392 Ill. 435, 441, 65 N.E.2d 23, the Court cited with approval the following language contained in *Andrae, supra.*

"Since the adoption of the statute relating to probation of criminal offenders, a record showing the verdict of conviction of a defendant of a felony is admissible as showing a former conviction, even though no sentence was pronounced, where the defendant was admitted to probation."

██ Whether a crime is infamous or not depends solely upon the statute, not upon the common law or the Court's view of its moral aspects. (*People v. Green*, 292 Ill. 351, 127 N.E. 50.) Conviction of an infamous crime deprives a person of the right to vote and other rights set forth in Ch. 38, Sec. 124—2, Ill. Rev. Stats., 1969. To adopt defendant's construction of the statute would be to place the determination of whether the crime was, or was not, infamous solely in the authority and discretion of the sentencing judge; a result clearly not within the contemplation of the statute.

 At one time the statute provided that a person convicted of larceny should be deemed infamous and made no distinction between petit larceny and grand larceny. A 1911 amendment removed petit larceny from the definition of infamous crimes. (See *People v. Cohen*, 171 Ill.App. 612.) The inclusion of the language "* * * if the punishment imposed is imprisonment in the penitentiary" in Sec. 124—1, *supra*, is clearly intended to distinguish the misdemeanor of theft under $150.00 from the felony theft over $150.00. Failure to impose a penitentiary sentence does not affect the quality of or diminish the seriousness of the offense, and we will not construe Sec. 124—1 to attain that result. We think that the intent of the legislature is clear: conviction of the crime of theft for which a sentence in the penitentiary could be imposed is a conviction of an infamous crime, and we hold that this is so, even though no sentence is imposed and, as here, the defendant is admitted to probation. The record of defendant's prior conviction was properly admitted into evidence.

Defendant urges that being stopped "on suspicion" of not displaying a license plate and his subsequent arrest for driving with an expired driver's license was illegal and that the evidence which flowed from that arrest was fruit from the "poisoned tree" and should have been suppressed, citing *Wong Sun v. United States*, 371 U.S. 471, and *People v.*

*Harr*, 93 Ill.App.2d 146, 235 N.E.2d 1. In *Harr* the officer had stopped the defendant because the vehicle and its driver "* * * appeared suspicious, and since he had not seen this vehicle in this vicinity before, he made a routine stop of the defendant's vehicle to determine who the defendant was, where he was going and where he had been; * * *." The officer then asked for defendant's driver's license, ascertaind that it had expired, and later, at the police station, a check revealed that the license had been suspended and conviction for the latter offense followed. The Court held that the officer had not stopped the defendant for the purpose of enforcing the provisions of Ch. 95½, Sec. 6-118, Ill. Rev. Stats., 1965, which provides that a driver shall have his license in his possession and display it, upon demand, to police officers. The Court further held that this statute cannot be used as a subterfuge to obtain evidence of information not related to the licensing requirements.

■■ The circumstances which prompted Trooper Rogers to stop defendant and request him to produce his license clearly distinguishes this case from *Harr, supra*. Defendant, by his own admission, was operating his motor vehicle which bore no license plates as required by Ch. 95½, Sec. 3-413, Ill. Rev. Stats. 1969. This is a misdemeanor punishable as provided in Ch. 95½, Sec. 3-915, Ill. Rev. Stats. 1969. The officer was, at that point, authorized under the provisions of Ch. 95½, Sec. 6-112, Ill. Rev. Stats., 1969, to require production of the license, and having produced an expired license the arrest was legal.

■■ The defendant consented to the subsequent search of his car and apartment. Consent to what might otherwise constitute an unreasonable search is a waiver of the constitutional privilege. It is a complete waiver of constitutional rights. (*Zap v. U.S.*, 328 U.S. 624, 90 L.ed. 1477; *People v. DiGerlando*, 30 Ill.2d 544, 550, 198 N.E.2d 503; *People v. Harris*, 34 Ill.2d 282, 285, 215 N.E.2d 214, and cases there cited.) The defendant's position before the trial court was that the consent was not voluntarily given. That Court heard the conflicting evidence on that issue and resolved the question in favor of the People. We have reviewed the evidence, and the finding of the trial court is not "clearly unreasonable"; it is amply supported by the evidence, and the question largely hinged upon credibility. We will not, therefore, disturb that finding. *People v. Harris*, 34 Ill.2d 285, 215 N.E.2d, 214; *People v. DiGerlando*, 30 Ill.2d 544, 198 N.E.2d 503.

Lastly, defendant urges error because of the admission of evidence of other criminal offenses, with which he had neither been charged nor convicted, during the hearing in aggravation and mitigation.

The People, over the continuing objection of defendant, endeavored

to prove that defendant had stolen a package of meat from a grocery store in Decatur. Police officers, again over the urgent and continuing objection of the defendant, testified that after the search of defendant's apartment, in addition to the White burglary, defendant confessed to 14 other burglaries. A list of those burglaries was apparently made. Officer Stoltz testified that the defendant had admitted to burglaries of Richardson, Eichel, Crane, Cousins and Ledbetter and stated that these "* * * are the ones I can recall right there off that report, sir." Officer Joseph Myers testified that he had participated in the questioning of defendant and that he had stated he was involved in "* * * approximately 14, 15" burglaries. The officer was asked if he recalled the particular burglaries to which defendant confessed and responded, "There was a Crane burglary. We discussed a Williams burglary, Hendrix burglary, Richardson * * * Ledbetter, Eichel, those are a few of the reports we discussed. I don't recall all of them at this time."

The procedure here involved was not employed pursuant to the terms of a negotiated plea as exemplified in *People v. Schleyhahn*, 4 Ill.App.3d 591. There the defendant had expressly agreed to, and participated in, a hearing in aggravation and mitigation in which the People offered evidence of his commission of other crimes with which he had neither been charged nor convicted. In *Schleyhahn* we commended the practice of "wiping the slate clean", of avoiding the expense and time consuming practice of multiple trials, and the advantage of the defendant of avoiding possible concurrent sentences. The American Bar Association Standards for Criminal Justice encourage the consolidation of offenses for disposition in a single proceeding. See Standards Relating to Pleas of guilty (par. 1.2) and Standards relating to Sentencing Alternatives and Procedures (par. 5.2a and b) and the comments appended. The Supreme Court, in *People v. Eldredge*, 41 Ill.2d, 520, 527, 244 N.E.2d 151 approved submission to the sentencing judge of evidence of other crimes to which defendant had confessed, but in the process stated that "There is no conclusion to be drawn from the record before us other than that defendant knowingly, voluntarily and intelligently participated in a disposition of this case which also resolved a very substantial number of other charges against him." In *Schleyhahn, supra,* while approving the procedure there employed, we cautioned "* * * assuming, of course, acquiescence in such procedure by the defendant."

It has been the rule in this State for many years that absent consent and waiver by the defendant only convictions may be proven in arriving at the sentence to be imposed, *e.g., People v. Jackson*, 95 Ill.App.2d, 193, 238 N.E.2d 196, and cases there cited.

■■ For the People to seek enhancement of the penalty on defendant's conviction of the White burglary by adducing evidence of other offenses over his objection was violative of several basic constitution guarantees. The defendant, during the hearing, denied the shoplifting charge and denied making the oral confessions. The admission of the evidence enabled the People to procure increased sentence, and hence punishment. for allege offenses upon proof not beyond a reasonable doubt; in effect to prosecution without indictment by a grand jury, and in deprivation of defendant's right to trial by jury. Such procedure cannot, of course, be condoned.

■■■ We reiterate that unless defendant knowingly, voluntarily and intelligently consents to the proof, or attempted proof, of other offenses not previously reduced to conviction, the State may not introduce such evidence during hearing in aggravation and mitigation. This consent, and waiver of the constitutional guarantees involved, must appear in the record. Because of the jeopardy problems so obviously involved, the proof of other offenses must be attended with sufficient detail so as to insure that the defendant is not subsequently tried for an offense concerning which proof was offered in the hearing in aggravation and mitigation. Here, for example, there was testimony about the "Crane" burglary. Which Crane? Sam, Helen or George? What premises were involved? When did the alleged offense occur This record, even had consent and waiver been obtained, would have been so vague and lacking in detail that resentencing would have been necessary. The procedure involved in securing consent, waiver, and in eliciting evidence of offenses of which the defendant has not been convicted, must be attended by a record of the same detail and clarity as required at the time of accepting a plea of guilty under Supreme Court Rule 402.

■■ It should also be borne in mind that implicit in the agreement (assuming consent and waiver on the part of the defendant) is the proposition that once the State endeavors to establish the commission of other offenses not previously reduced to conviction, there will be no later prosecution for those offenses. It seems that the holding in *Santabello v. New York* (Dec. 20, 1971), 40 L.W. 4076, would command enforcement of that agreement.

Defendant's prior record reveals a conviction in 1967 for theft for which a $50.00 fine was imposed, and a conviction in 1968 on a plea of guilty to the crime of theft over $150.00 for which defendant received probation which he successfully completed. In view of the disposition here, we do not consider the contention that the sentence imposed is excessive.

For the above reasons defendant's conviction is affirmed. The sentence imposed is vacated, and the cause remanded for another hearing in aggravation and mitigation and resentencing before a different judge.

Defendant's conviction affirmed, sentence vacated and cause remanded.

TRAPP, P. J., and CRAVEN, J., concur.