THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* SPURGENT MASON, Petitioner-Appellant.

(No. 74-119;

Fifth District—June 6, 1975.

Margaret Stapleton, of Land of Lincoln Legal Assistance Foundation, Inc., of Cairo, for appellant.

Waldemar C. Spomer, State's Attorney, of Cairo (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The defendant brought this action under the Illinois Post-Conviction Hearing Act (Ill. Rev. Stat. 1969, ch. 38, par. 122—1) to secure relief from the alleged violations of his constitutional rights which resulted in his conviction of the offense of murder and to a sentence of not less

than 14 years and not more than 25 years. After a hearing on the post-conviction petition the trial court dismissed the petition, denying the relief requested.

We agree with the decision of the trial court in dismissing the post-conviction petition.

The petitioner-appellant presents three issues for review:

1. Whether the defendant was deprived of his constitutional rights by the failure of the trial judge to advise him of the full range of penalties to which the defendant was subject before accepting his guilty plea.

2. Whether the defendant was deprived of his constitutional rights by being coerced into pleading guilty by the prosecution and the defense counsel.

3. Whether the representation afforded to the defendant by his court-appointed counsel amounted to deprivation of his constitutional right to effective assistance of counsel.

A review of the record shows that on June 7, 1971, a criminal complaint was issued against Spurgent Mason, the appellant, Deloyd Dennis and Floyd Wiggins for the June 1 murder and robbery of a cab driver, Emriel Johnson. On June 8, appellant, after the Miranda warnings, made a statement admitting presence at the scene and participation in the robbery. Defendants were indicted on June 21 and an attorney was appointed to represent the appellant on June 28, the day of arraignment, after two appointed attorneys withdrew. On arraignment, after meeting with his attorney, appellant pled not guilty. Later in the day, accompanied by his attorney, appellant was interviewed by prosecution and police officials. Appellant again waived his right to remain silent and made practically the same statement as he had made on June 8. Between June 28 and September 2, 1971, various motions and answers were filed in the case; appellant submitted to a polygraph test; he was also examined by a psychiatrist and the report was filed with the court on August 28.

On September 2, 1971, the defendant with his attorney appeared in court, and the attorney announced that there had been plea negotiations. The defense counsel told the court that appellant would plead guilty to murder with the recommendation from the State that he be sentenced to a term of 14 to 25 years. All other charges would be dropped. The record shows that the appellant approved of this agreement. The court asked the appellant what his plea was, and he answered that he was guilty. The State gave a factual basis for the plea and appellant's attorney stipulated to these facts. The court informed the appellant that he had a right to remain silent, to have counsel, to have a jury trial, to confront and cross-examine witnesses and to plead not guilty. The ap-

pellant replied that he understood each of these rights, and his plea was voluntary. The court further informed the defendant of the nature of the charge. After determining that no promises, threats, force or duress were used to obtain the plea, the court informed the appellant of the penalty for murder which was that the appellant could be sentenced to a term of not less than 14 years, and the maximum could be any number of years beyond 14. He was further told that if he was found guilty by a jury, a sentence of death may be imposed if the jury so recommends. The guilty plea was then accepted by the court, and it determined that the defendant understood his rights and made his plea voluntarily.

At the hearing in aggravation and mitigation which immediately followed the acceptance of the guilty plea, defense counsel introduced the psychiatric report which had been filed, and informed the court that a 14-year minimum term would be reasonable for his client. No evidence was presented in aggravation, and the appellant declined the offer to speak on his own behalf. The court sentenced the appellant to imprisonment for not less than 14 nor more than 25 years, and informed him of his right to appeal, within the 30-day time limit.

The appellant did not appeal the conviction and sentence. On November 3, 1972, the appellant filed an amended post-conviction petition, after counsel had been appointed. An evidentiary hearing was conducted on January 24, 1974, and the petitioner was the only witness at the hearing. The appellant's testimony at the evidentiary hearing described how he first met his court-appointed attorney. The meeting was in the courtroom on the day of arraignment and it lasted about 15 minutes, with appellant pleading not guilty. Later that day, appellant gave a statement in an interview with an investigator for the prosecution. Several days later, a polygraph examination was given to appellant. Defense counsel told him that he didn't have to take the polygraph test, nor would he recommend that he take one. Appellant further stated in his testimony that his attorney never discussed prosecution witnesses or their involvement in the crime with him.

Appellant maintained that his attorney told him that if he didn't cooperate, he would get off the case. The assistant State's attorney told appellant he would recommend life imprisonment or the death penalty if he didn't plead guilty. The appellant then decided to plead guilty.

On cross-examination, the appellant said that the first time he admitted killing the cab driver was immediately before he took the polygraph test. He also testified that he was telling the truth at that time. The appellant remembered waiving his rights in court, including being admonished as to the fact that no duress, threats or promises were made to induce his plea. Following the evidentiary hearing, the trial court re-

cessed for 1 day and then dismissed the amended post-conviction petition.

■■ The question raised by the appellant in this appeal that the appellant was deprived of his constitutional rights by the failure of the trial judge to advise him of the full range of penalties to which the defendant was subject before accepting his guilty plea was not included in the amended post-conviction petition. This point was also not presented to the trial court in the evidentiary hearing. Consequently, this issue is waived. *People v. Eldredge,* 41 Ill.2d 520, 244 N.E.2d 151.

■■ The record does not bear out appellant's statement that he was deprived of his constitutional rights by being coerced into pleading guilty by the prosecution and defense counsel. This claim is based on alleged prosecutorial threats of the death penalty, if the case went to trial, and on an alleged claim that the defense counsel would get off the case if it went to trial. Even if the defendant feared that he would receive the dealth penalty if the case went to trial, fear of a harsher sentence does not invalidate an otherwise voluntary plea. Neither the allegation of fear of a possible death penalty (see *North Carolina v. Alford,* 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160; *People v. Wilbourn,* 48 Ill.2d 187; *People v. Sephus,* 46 Ill.2d 130, 262 N.E.2d 914), nor the allegation of fear of possible use at trial of the co-defendant's testimony or statements (*People v. Kelley,* 44 Ill.2d 315, 255 N.E.2d 390) is sufficient to invalidate the defendant's otherwise knowing and intelligent plea of guilty. *People v. Scott,* 49 Ill.2d 231, 274 N.E.2d 39.

■■■ At the evidentiary hearing, the appellant testified that defense counsel told the appellant to "level with him." Counsel said that if appellant did not cooperate he would get off the case. Later in his testimony, the appellant repeated this statement. When the statement was first made, it is obvious that by "cooperate" defense counsel wanted the appellant to tell him the facts and was not wanting him to plead guilty. This was not coercion to plead guilty. At the plea proceedings when the appellant pled guilty, he said that no force, threats or promises were used to obtain the plea. At the evidentiary hearing, he said he was told to answer this way. Consequently, this assertion is based solely on the appellant's unsubstantiated testimony. There was no dissatisfaction with his counsel expressed by the appellant during or at the conclusion of the hearing. It was not against the manifest weight of the evidence that the trial court's finding of no coercion was erroneous.

In Illinois, to prove incompetence of counsel, the defendant must show actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney, which results in substantial prejudice without which the outcome would probably have been different (*People*

*v. Goerger,* 52 Ill.2d 403, 288 N.E.2d 416). The two factors to be proven are actual incompetence, and substantial prejudice. *People v. Morris,* 3 Ill.2d 437, 121 N.E.2d 810.

■■ Appellant at the evidentiary hearing stressed the failure of defense counsel to spend more time on his case. The amount of time spent on a case does not in and of itself establish the quality of the work, or provide per se a standard of competence of counsel. In *People v. Dudley,* 46 Ill.2d 305, 263 N.E.2d 1 (1970), *cert. denied,* 402 U.S. 910, 28 L.Ed.2d 651, 91 S.Ct. 1386, defense counsel interviewed defendant twice, and filed a motion of discovery and to produce. The court in *Dudley* held that the petition offered no suggestions of how any further pretrial investigation would have been helpful to the defense, and affirmed the dismissal of the post-conviction petition without an evidentiary hearing. Defense counsel in the instant case met with the appellant three times, not taking into count court appearances, and filed and received answers to his discovery motion and the motion to produce.

■■ It is also alleged by the appellant that at one time he made a statement to the prosecution while defense counsel was present and the attorney did not object. In that statement, the appellant admitted participation in the incident, but denied shooting the victim. No objections were made to the prosecutor's questions. Yet, the appellant does not show how he could have prevented the statement. The appellant was advised of his right to remain silent. Although no motion was made to suppress the statement, such failure, in itself, is insufficient to show incompetency (*People v. Harter,* 4 Ill.App.3d 772, 282 N.E.2d 10).

■■■ Appellant points out in his post-conviction petition that defense counsel should not have allowed the appellant to submit to a polygraph examination. Results of a polygraph examination cannot be introduced as evidence of either guilt or innocence of an accused. (*People v. Nicholls,* 42 Ill.2d 91, 245 N.E.2d 771; *People v. Nelson,* 33 Ill.2d 48, 210 N.E.2d 212.) The taking of a polygraph test is not per se violative of any right if it is not admitted in a court proceeding. The statement objected to by the appellant was not made during a polygraph examination, *i.e.,* when appellant was attached to a polygraph machine. The appellant made an incriminating statement during a conversation that preceded the actual performance of the test. Such a statement does not fall under the polygraph exclusion, as it is not part of the examination. Use of the statement as part of the factual basis for a guilty plea, along with statements by codefendants, in no way prejudiced the appellant.

■■ At the hearing before sentencing, defense counsel introduced a psychiatric report which was dated August 20, 1971, and had been prepared pursuant to court order granting the defense counsel's motion

for a determination of the defendant's competency to stand trial. Appellant claims that the report contained much material that was damaging to him. An examination of the report indicates that it contains valuable information pertaining to appellant's history as a juvenile offender, much of which could have been obtained from court records and records of the Department of Corrections. There was no showing of how the appellant could be prejudiced by this report, as the sentence conformed to the terms of the plea agreement.

Ethical consideration in the *Code of Professional Responsibility*, section 7—7, recommends that a client make the final decision after advice of counsel. Section 7—8 allows counsel to "emphasize the possibility of harsh consequences that might result from assertion of legally permissible positions." Appellant decided to plead guilty after being informed by defense counsel of the possible consequences of a trial by jury, those being the possibility of life imprisonment or the death penalty. There has been no violation of these ethical considerations. Appellant made his own decision to plead guilty, and he has made no proof of any interference with this decision making process by defense counsel.

Appellant's contention is that the cumulative effect of the acts and omissions of defense counsel deprived him of effective assistance of counsel, and when compared to the American Bar Association Code of Professional Responsibility and Standards for the Administration of Criminal Justice his incompetence and effective representation is proved. Appellant alludes to Canons 5, 6, and 7 of the *Code of Professional Responsibility* to be determinative of defense counsel's incompetence. Canon 5, "A Lawyer Should Exercise Independent Professional Judgment on Behalf of his Client," discusses the lawyer's duty of loyalty to his client and the requirement that he refuse employment and actions which would affect adversely the advice he gives his client. There has been no evidence to prove disloyalty or actions by the attorney that adversely affected his judgment in regard to the appellant.

Canon 6, "A Lawyer Should Represent a Client Competently," requires a lawyer to only accept employment he is competent to handle and to remain proficient in this field. Appellant has never alluded to any deficiency in defense counsel's proficiency or knowledge in the field of criminal law. Canon 7, "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law," tells counsel to advise the client of the probability of success, but let the client make his own decision.

■■ Representation herein did not amount to "no representation at all," nor was it below the "expected standard of competence of counsel." The outcome would not have been different considering the amount of evidence that was available against the appellant indicating his guilt—

his statement, his codefendant's statements, and the presence of his wallet in the victim's taxicab. The defendant did not suffer prejudice because of any action or inaction of his attorney. There is no showing that defense counsel violated any of the canons or standards or professional responsibility in his representation of the appellant, or that the sources cited by appellant are indeed appropriate standards for adjudication of appellant's claims of incompetency or inadequacy of representation. No sufficient showing of inadequacy of defense counsel, measured by any alleged standard cited by appellant which resulted in substantial prejudice against the appellant was made in the post-conviction proceedings by the appellant. Consequently, the trial court's denial of the post-conviction petition was not against the manifest weight of the evidence.

For the above reasons, the judgment of the Circuit Court of Alexander County is affirmed.

Judgment affirmed.

EBERSPACHER and KARNS, JJ., concur.