(No. 14342.—Reversed and remanded.)

The People of the State of Illinois, Defendant in Error, *vs.* Charles Clark, Plaintiff in Error.

*Opinion filed February 22, 1922.*

1. Criminal law—*jury should not take standards of handwriting to jury room for purpose of comparison.* The act of 1915 concerning proof of handwriting by comparison applies to criminal cases merely as a rule of evidence, but it does not change the practice with respect to the right of the jury to take physical objects introduced in evidence from the bar of the court and does not authorize the jury to take standards of handwriting to the jury room for the purpose of comparison.

2. Same—*section 76 of Practice act, as to taking documents to jury room, applies only to civil cases.* Section 76 of the Practice act, providing that papers read in evidence, other than depositions, may be carried from the bar by the jury, is applicable only to civil cases.

3. Same—*what objects may be taken to jury room.* In a criminal case a jury may take with them to the jury room only those objects which are directly connected with the subject of judicial investigation, and it rests largely in the discretion of the trial judge whether these objects may be so taken.

4. Same—*proof of handwriting by comparison, under the act of 1915, should be carefully guarded.* In permitting proof of handwriting by comparison under the act of 1915, (Laws of 1915, p. 440,) the trial court should in a criminal case guard the rights of the accused with unusual care and should give his counsel full opportunity to discuss the question before the jurors, each of whom should be given opportunity to examine the signature to be proved and to compare it with the standards of handwriting in evidence.

5. Same—*constitution requires that evidence be produced in presence of accused.* The constitutional provision that the accused shall have the right to meet the witnesses face to face means that all the evidence must be produced in the presence of the accused, and to permit the jury to take handwritings from the bar of the court and to read and compare them for the first time while they are considering their verdict violates said constitutional provision and gives undue emphasis to such evidence.

6. Same—*accessory after the fact cannot be convicted as principal in larceny—instruction.* An accessory after the fact cannot be convicted as a principal in the commission of larceny, and where the evidence is such that the jury might conclude that the defend-

ant was an accessory after the fact, it is error to give an instruction, in the language of the statute, as to the liability of accessories being convicted as principals, without pointing out that the language used refers to an accessory before the fact..

7. SAME—*when instruction that possession of stolen property is evidence of guilt is improper.* It is error to give an instruction that possession of stolen property soon after the commission of the offense is *prima facie* evidence of guilt, where there is no evidence that the property was ever in the exclusive possession of the defendant and the evidence shows only that he negotiated for the sale of the property.

8. SAME—*when instruction defining reasonable doubt is erroneous.* An instruction defining a reasonable doubt as being a doubt "as to the guilt of the accused on the whole evidence and not as to any particular fact in the case not material to the issue," is erroneous in leaving the jury to decide what are the material facts.

9. SAME—*section 39 of Motor Vehicle act, fixing punishment for theft of motor vehicle, is invalid.* Section 39 of the Motor Vehicle act, fixing the punishment for the theft of a motor vehicle as for a felony, violates section 13 of article 4 of the constitution in including a subject not expressed in the title of the act, and because, while it purports to be a complete act in itself, it is, in effect, an attempt to amend the Criminal Code without complying with such section. (*Quinn* v. *People,* 123 Ill. 333, distinguished.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

LESLIE A. NEEDHAM, (DAVID K. TONE, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, HENRY T. CHACE, JR., and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

A special model four-passenger Cadillac automobile of the value of $4000, the property of Edward Hess, was stolen in Chicago some time before noon on Friday, April

23, 1920. The car was recovered by the police of Chicago about nine o'clock in the evening of April 25. It was standing in front of the home of George Wernicke and was in the possession of him and Isadore Regal. These two men were arrested, and as a result of statements made by them, Charles Clark, plaintiff in error, was arrested and indicted. The indictment was in two counts, and charged plaintiff in error with larceny of the automobile and with receiving stolen property. The second count was *nolle prossed* by the State's attorney and the jury returned a verdict of guilty in manner and form as charged in the first count of the indictment, and pursuant to instructions of the court they fixed the punishment at imprisonment in the penitentiary and a fine of $500, in accordance with the provisions of section 39 of the Motor Vehicle law. Wernicke and Regal were not indicted. Plaintiff in error prosecutes this writ of error to review the judgment of the criminal court.

Wernicke testified that plaintiff in error was a practicing physician and that he had attended his family for fifteen years; that plaintiff in error told him early in January that he could sell him a Packard automobile at a low figure; that they had several conversations about the matter; that in March and April plaintiff in error called him on the telephone and told him that he could get a good car for $1400; that he talked with Regal about the matter and Regal agreed to look at the car; that plaintiff in error said the car must be brought from Detroit and that he required a deposit of $200; that Regal gave him a check for $200, which he delivered to plaintiff in error, who gave his receipt therefor, signed "Frank Morton;" that plaintiff in error told Wernicke the machine would be delivered around the corner from his office about 8:30 in the evening of April 24; that he and Regal were at the appointed place at 8:30 and saw the machine driven to the place by a man and a woman, who got out of the car and walked away; that he then went to the office of plaintiff in error and paid him the

balance of $1200 with twelve $100 bills; that he went back to the car and he and Regal got into it and found it locked; that just as he was preparing to leave the car and go to the office of plaintiff in error the latter appeared with a key and gave it to him, and that he unlocked the car with the key and drove away. Plaintiff in error denied any connection whatever with the larceny of the automobile, the receipt of the check or the money or the making and giving of the receipt. The check and the receipt were marked for identification and were received in evidence but were not read to the jury in open court. There was other evidence introduced, but what we have stated is sufficient for the purposes of this opinion.

The only corroboration of the testimony of Wernicke and Regal connecting plaintiff in error with this crime was the opinions of expert witnesses that the receipt was written by him. Other writings proven to be those of plaintiff in error were introduced in evidence for the purpose of comparison. None of these were read to the jury in the court room. The court refused to permit counsel for plaintiff in error to read and exhibit them to the jury and to call their attention to certain points of difference during the course of their argument. The court permitted the jury to take with them when they retired to consider their verdict, the check, the receipt and the writings introduced, for the purpose of comparison. This was error. Section 8 of division 13 of the Criminal Code provides that "all trials for criminal offenses shall be conducted according to the course of the common law, except when this act points out a different mode, and the rules of evidence of the common law shall also be binding upon all courts and juries in criminal cases except as otherwise provided by law." Section 76 of the Practice act, which provides that "papers read in evidence, other than depositions, may be carried from the bar by the jury," is applicable only to civil cases. (*Dunn* v. *People,* 172 Ill. 582.) The court erred in per-

mitting these papers to be taken by the jury, first, for the reason that they were not read in evidence so that the jury knew their contents before they had taken the case; and second, the papers, introduced solely for comparison, could not have been taken by the jury under the mode of procedure established by the common law, and there was no provision of the Criminal Code authorizing such papers to be taken. In a criminal case a jury may take with them only those objects which are directly connected with the subject of judicial investigation, and it rests in the discretion of the trial judge whether these objects may be carried from the bar by the jury. (*Dunn* v. *People, supra; People* v. *Morris,* 254 Ill. 559.) In the absence of a statute authorizing it the law is well settled in this and other jurisdictions that the genuineness of a signature or writing cannot be proved by comparing it with other admittedly genuine signatures or handwriting not admissible in evidence for other purposes or not already a part of the record. (*Jumpertz* v. *People,* 21 Ill. 375; *Himrod* v. *Gilman,* 147 id. 293; *Stitzel* v. *Miller,* 250 id. 72; *People* v. *Parker,* 67 Mich. 222, 34 N. W. 720; *Hickory* v. *United States,* 151 U. S. 303, 14 Sup. Ct. 334; *Stokes* v. *United States,* 157 id. 187, 15 Sup. Ct. 617.) In 1915 the legislature passed an act which, with certain limitations, authorized the proof of handwriting by comparison with writings properly in the files or records of the case, admitted in evidence, or treated as or admitted to be genuine, or proved to be so to the satisfaction of the court. (Laws of 1915, p. 440.) This new rule of evidence applies to the trial of criminal cases, but it does not change the practice with respect to the right of the jury to take physical objects, introduced in evidence, from the bar of the court. The rules of practice must be changed by amendments to the Criminal Code, but the rules of evidence may be "otherwise provided by law."

The constitution guarantees that "in all criminal prosecutions the accused shall have the right to appear and de-

fend in person and by counsel" and "to meet the witnesses face to face." In applying the new rule of evidence permitting proof of handwriting by comparison the trial court should guard the rights of the accused with unusual care. The act provides that the accused and his attorney shall have reasonable notice of the purpose of the State to prove the handwriting of the accused by comparison and that he shall have reasonable opportunity to examine the standards proposed to be used. It is necessary that these rights should be strictly enforced in order that the accused and his counsel may be properly prepared to defend against this character of evidence, which is unusual and may raise a collateral issue. Each juror should be given opportunity to examine the signature or handwriting to be proven and to compare it with the standards received in evidence, and counsel for the accused should be given full opportunity to discuss the question before the jury. The constitutional provision that the accused shall have the right to meet the witnesses face to face means that all evidence in a criminal case must be produced in the presence of the accused. To permit the jury to take the writings from the bar of the court and to read and compare them for the first time while they are considering their verdict is to permit them to receive evidence after the cause has been submitted to them for decision and amounts to a denial to the accused of the right to appear and defend against such evidence and to be represented by counsel. It is very important for the accused and his counsel to be able to perceive exactly what impression is being made upon the jury by any portion of the evidence given on his trial, for the reason that it might be within their power to then introduce other evidence which might tend to disabuse the jury of a wrong impression, or the counsel by fair and legitimate argument might be able to convince the jury of the right view to be taken of such evidence. It is impossible that a jury could compare handwritings without receiving some evidence, and

301—28

to permit them to take the handwritings from the bar of the court after the case has been submitted to them for decision is to give undue emphasis to one part of the evidence. The evidence on all other points in controversy must be remembered by the jury, and we perceive no reason why exception should be made with respect to this particular branch of the evidence.

The error committed by the trial court in permitting the jury to take with them the standards of handwriting was greatly aggravated by his sending to the jury room, at the request of the foreman, a magnifying glass to be used by the jury in making the comparison between the standards and the writing in dispute. As we have said, counsel for accused were not permitted to have the jury examine the disputed handwritings in open court and were not permitted to argue this branch of the case. It needs no citation of authority to demonstrate the seriousness of this error.

The court gave to the jury the following instruction:

"An accessory is he who stands by, and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised, encouraged, aided and abetted the perpetration of the crime. He who thus aids, abets, assists, advises or encourages, shall be considered as principal and punished accordingly. Every accessory, when a crime is committed, within or throughout this State, by his aid or procurement in this State, may be indicted and convicted at the same time as the principal, or before or after his conviction, whether or not the principal is convicted or amenable to justice or not, and punished as principal."

This instruction embodies two sections of the Criminal Code and as an abstract proposition of law is correct. In view of the evidence in this case it was error to give the instruction without pointing out that the accessory defined by the instruction was an accessory before the fact. The jury might reasonably have concluded from the evidence here submitted that plaintiff in error was an accessory after

the fact, and if they did so conclude they could not have convicted him as a principal. *Watts* v. *People,* 204 Ill. 233.

The court gave to the jury the following instruction:

"Possession of stolen property, soon after the commission of the offense of stealing the same is *prima facie* evidence of the guilt of the person in whose possession such property is found, unless explained."

In view of the evidence in this case this instruction was clearly misleading and it was error to give it. There was no proof that the automobile was ever in the exclusive possession of plaintiff in error, and such proof is necessary before possession of stolen property is any evidence of its theft. *People* v. *Kubulis,* 298 Ill. 523; *Miller* v. *People,* 229 id. 376.

A stock instruction defining reasonable doubt which contained the following sentence, "The reasonable doubt that the jury are permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence, and not as to any particular fact in the case not material to the issue in the case," was given. This instruction has been repeatedly condemned by this court, (*People* v. *Cramer,* 298 Ill. 509; *People* v. *Seff,* 296 id. 120;) and it seems strange that the practice of giving the instruction should not be discontinued in the criminal court of Cook county, where the same error has been repeatedly committed.

The court instructed the jury that the punishment for the crime for which plaintiff in error was on trial was fixed by section 39 of the act in relation to motor vehicles, which provides: "Whoever steals any motor vehicle of a value greater than fifteen dollars, ($15,) * * * shall be fined in any sum not exceeding five hundred dollars ($500) and be imprisoned in the State penitentiary not less than two years nor more than fifteen years." (Laws of 1919, p. 686.) The first count of the indictment was in the usual language of an indictment for prosecution for larceny under section 167 of the Criminal Code. Section 20 of division 2

of the Criminal Code provides that "all offenses herein defined shall be prosecuted, and on conviction punished as by this act is prescribed, and not otherwise." The Motor Vehicle law is a law governing the registration, use and operation of motor vehicles, and if it was intended by the legislature to include within the limits of that law the definition of a new felony and to fix the punishment therefor, the section is unconstitutional for the reason that the subject of the section is not expressed in the title of the act, and it therefore contravenes section 13 of article 4 of the constitution of 1870. (*Milne* v. *People,* 224 Ill. 125.) The purpose of the provision of the constitution which prohibits the passage of an act embracing more than one subject and which requires that subject to be expressed in the title of the act is to prevent the insertion in a bill of matters which bear no relation to the title, by means of which members of the legislature would be led to vote for a measure which they would not knowingly have approved. Without this restriction any number of incongruous matters might be aggregated in one bill and the title of the act give no hint as to the provisions of the act that were to follow. This restriction not only protects the members of the legislature from deception but it likewise protects the public. The legislature, of course, has authority to fix a different punishment for the stealing of an automobile than it fixes for larceny in general, but it must make the change by a proper amendment of the Criminal Code. This section cannot be sustained as a limitation on section 168 of the Criminal Code, which fixes the punishment for larceny, as the section fixing the punishment for horse-stealing was sustained in *Quinn* v. *People,* 123 Ill. 333, for the reason that the section under consideration is not a part of the Criminal Code. It cannot be sustained as an amendment to the Criminal Code for the reason that it does not purport to be an amendment. It purports to be a complete act in itself, but it is, in effect, an attempt to amend the Criminal Code

respecting punishment for larceny without complying with section 13 of article 4 of the constitution, and it is for this further reason void.  *Badenoch* v. *City of Chicago, 222* Ill. 71;  *People* v. *Stevenson, 272* id. 325;  *Board of Education* v. *Haworth, 274* id. 538.

Other errors occurred during the course of the trial, but inasmuch as none of them are likely to occur on a re-trial of this case we do not consider it necessary to discuss them.

The judgment is reversed and the cause is remanded to the criminal court of Cook county for a new trial.

*Reversed and remanded.*