THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES ALLISON, Plaintiff in Error.

*Opinion filed April 20, 1927—Rehearing denied June 9, 1927.*

1. CRIMINAL LAW—*when defendant may be cross-examined by co-defendant's counsel.* Where two defendants are jointly indicted and tried for the same crime and each defendant testifies in his own behalf and seeks to place the guilt on the other and they are represented by different counsel, each of whom knows nothing of the testimony of his client's co-defendant until he hears it from the witness stand, counsel for one defendant may cross-examine the other defendant after his cross-examination by the People and may attempt by such cross-examination to bring out facts which might weaken or destroy the effect of his testimony.

2. SAME—*when instructions are not erroneous in mentioning the co-defendant.* Where two defendants are jointly indicted and tried for the same crime and each defendant testifies in his own behalf and seeks to place the guilt on the other, instructions in behalf of one defendant are not erroneous in mentioning the name of the co-defendant and do not thereby necessarily assume the guilt of the co-defendant, where all the instructions fairly submit to the jury the question whether the co-defendant alone committed the crime or he and the other defendant jointly.

3. SAME—*when giving instruction as to accessory is not preju-dicial.* Error in giving an instruction in regard to an accessory before the fact when there is no evidence on which to base the instruction, the evidence only tending to show that one of the two defendants might have been an accessory after the fact, cannot be regarded as prejudicial to the other defendant, who under the evidence was either guilty as principal or not guilty at all. (*People* v. *Clark,* 301 Ill. 428, distinguished.)

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. JAMES S. BALDWIN, Judge, presiding.

REDMON & REDMON, ANDERSON & MANGAS, and E. J. HAWBAKER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES F. EVANS, State's Attorney, and MERRILL F. WEHMHOFF, (A. R. IVENS, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Homer Morville and James Allison were indicted by a grand jury at the May term, 1926, of the circuit court of Macon county for the larceny of an automobile, the property of William J. and James H. Wallens. A trial was later had before a jury, which returned a verdict finding Morville not guilty and Allison guilty. The latter's age was found by the jury to be twenty-six years and the value of the automobile $200. A motion for a new trial was overruled by the court and judgment entered on the verdict sentencing Allison to an indeterminate term in the penitentiary. He has sued out a writ of error to review the judgment.

The facts developed upon the trial were substantially as follows: On the 10th day of April, 1926, a Chevrolet touring car belonging to William J. and James H. Wallens was stolen after 7:30 o'clock in the evening from where it was parked on a street in Decatur, Illinois. On the 14th of April, 1926, James Allison and Homer Morville drove the stolen car into Grant Park, Illinois, and stopped for lunch.

Kyle, a police officer there, observed the car and that a cloth was tied over the tail light and the headlights were not burning. He approached Allison and Morville and asked them for some evidence of their ownership of the car. Both said they owned the car—that it was a partnership car. Morville said they went to Chicago on the 9th and were going back home. He told the officer to call an address he gave in Bloomington, and the officer called but there was no such address. While the officer was telephoning Morville disappeared. The mayor of Grant Park, VanZant, came at the officer's call to take charge of the parties. Morville gave his name as Homer Miller. The owner of the restaurant, Mrs. Anderson, and mayor Van-Zant, were present when Morville got away. The mayor tried to overtake him and fired his gun but did not bring him back. Allison was lodged in jail. He gave his name as Jack DeVore.and said Morville's name was Homer Miller. The officer found identification cards, giving Allison's real name, in his sock. Allison said the car belonged to the other fellow and he was being given a lift to Chicago from Cerro Gordo, Illinois. After that Allison did not talk about the matter and only said he knew nothing about it.

VanZant testified he was president of the village board of Grant Park and saw defendants in a restaurant there after midnight, April 14. He went there in answer to a call from officer Kyle. Morville and Allison were in the restaurant. He talked with them and they together went out to the car while Kyle was away. They said that it belonged to both of them. Both did the talking. He asked where their identification cards were, and they said in the car. They looked in the car but did not find them. They went back into the restaurant, and one of them,—he believed it was Morville,—suggested they call up an address in Bloomington. They did so, and learned through the operator there was no such address there. He told that to Allison and Morville and turned the phone over to Kyle.

Morville said he had a card in the car which would prove who he was, and asked to go get it. The officer told him he could do so, and witness went out with him. He broke and ran, and witness went back and got the officer's gun, ran down about half a block and fired the gun, but he never saw him after that time. Morville gave his name as Miller and Allison gave the name of DeVore.

Allison testified in his own behalf and denied stealing the car or having anything to do with stealing it. He testified he had been home at his grandfather Ingleman's, at Cerro Gordo, a week before the night he was in the car at Grant Park. As he went down there he wrecked his car about eight miles from Watseka and had it towed to a garage for repairs. He went back to Chicago Heights the evening of the 13th. That night Morville gave him a ride from Chicago Heights to Grant Park. Witness was on the way to Watseka to get his car. He said he had some conversation with officer Kyle about the car at Grant Park. Morville told the officer the car belonged to him, and witness could not remember saying that it belonged to both of them. It might have happened and it might not. He could not remember telling the officer to call a number or address in Bloomington for identification. He said something was mentioned about calling somebody, and he thought it was mentioned by Morville. They were searched in the restaurant at Grant Park. Witness had them put in a call to Bloomington but no telephone number was mentioned. He had his identification on him when he was searched and the number of his wrecked car. He could not remember there was a card in his sock or that he gave the name of DeVore. When the officer took up the telephone to answer the Bloomington call Morville said something about their being a card in the car and ran out. The officer started shooting.

Allison was permitted to be cross-examined by Morville's counsel. Over objections of Allison's counsel he

was permitted to testify, in answer to questions of Morville's counsel, that he went to Chicago on April 8, after visiting his grandfather at Cerro Gordo. He could not recall what time on the 8th he left Cerro Gordo for Chicago. He testified he could not remember being in Chicago Heights the night of April 10 but was there the evening of the 13th. He first saw Morville around 8:30 o'clock and got a ride with him. He asked to ride with him to Watseka. He had a speaking acquaintance with Morville for several years. He testified he told the officer at Grant Park his car was in repair at Watseka and that he was supposed to call for it. The first time he ever saw the stolen car was at Chicago Heights the evening of the 13th.

Herbert Goble was called as a witness for Morville and examined by Morville's counsel. He testified he had known Morville about two years. Morville worked for witness from the 6th of April to the 28th, 1926, and on April 10 was at witness' house, in Chicago Heights, all day. He was with the witness in Chicago Heights on April 11. Witness lived there and was a carpenter. He was then examined by the State's attorney and testified he was not related to Morville. He had a private garage and a wood-working machine and kept Morville's time. Morville boarded at witness' house and was with him and his wife the evening of April 10 in Chicago Heights. Witness' wife was called as a witness for Morville and corroborated the testimony of her husband about Morville working for her husband and being in Chicago Heights; that he boarded at her house and worked for her husband; that he went with her and her husband to town the night of April 10.

Morville's counsel introduced in evidence Exhibits A. B and C. There was no objection made to their introduction. The exhibits are not abstracted, but were the record of the account of Herbert Goble with Morville while Morville worked for him.

Mrs. Alfred Goble, a witness called for Morville, testified he worked for Herbert Goble in the month of April, 1926, and she, the Gobles and Morville were up-town on April 10 about 7:00 o'clock in the evening and came home about 10:30 or 11:00 o'clock.

Morville testified in his own behalf. He said he was in Chicago Heights April 10, working on Herbert Goble's car. He began working for him the morning of April 6. About 7:30 o'clock, April 10, they all drove to town in Chicago Heights and stayed until 10:30. Next day he worked on the car. Decatur is about 165 miles from Chicago Heights. He worked for Goble April 13 all day and that evening made panels with the wood-working machine. He had known Allison probably ten years. Allison stopped at Goble's house about 11:30 the night of the 13th. He was in a Chevrolet car. · He said he was going down home and wanted witness to go with him. Witness did so and they stopped at Grant Park to get something to eat. Allison drove the car to Grant Park, where an officer came and wanted to know whose car it was. It had only one headlight. Allison said it belonged to both of them. The officer wanted an identification, and witness had nothing on him and they went out to look at the car. Neither of them had any identification with them. Witness gave them a number to call in Bloomington,—he didn't remember it any more,—and while the officer was telephoning witness ran out of the door. The number given was fictitious. Witness went back to Chicago Heights and arrived there about seven o'clock. the next morning. The first time he saw the stolen car was in Chicago Heights on April 13, about 11:00 or 11:30. He testified he was not in Macon county the 9th, 10th or 11th of April. He lived in Piatt county. He was arrested a month before the trial. He testified he never advised any person or persons to steal the automobile and did not know it was a stolen car until they were in Grant Park. There Allison told the witness the

car did not belong to him. That is all he said. Witness was examined by the State's attorney and testified at considerable length about working for Goble in Chicago Heights from April 6. Allison told witness his car was at Watseka. Witness said VanZant and officer Kyle must have misunderstood his name, for he told them it was Homer Morville. He did not tell them where his home was. The car did not belong to witness. He said he escaped because he did not want to be arrested and wanted to get back to work. He said he told the State's attorney he was not in Grant Park the night of the 13th because a lawyer told him not to talk about the case. He said he was there the night of the 13th or 14th. He admitted telling the State's attorney before the trial that he did not know Allison.

Plaintiff in error, Allison, urges as reasons why the judgment should be reversed, (1) the court erred in admitting People's Exhibits A, B and C; (2) the court erred in allowing the attorney for Morville to cross-examine plaintiff in error and base the cross-examination upon the cross-examination by the State's attorney; (3) the court erred in allowing the attorney for Morville to act as prosecutor of plaintiff in error; (4) the court erred in giving instructions for the People.

The exhibits complained of were admitted in evidence without objection from plaintiff in error.

Several instructions given for the People at the request of the State's attorney are objected to, and plaintiff in error's brief says, "As to instruction 7 we cite"—naming five cases. No argument is made in support of the assignment that the court erred in giving that instruction. The instruction told the jury the effect of proof of the unexplained possession of property recently stolen. The instruction is in the language approved in *People* v. *Surace,* 295 Ill. 604.

The chief ground relied upon for a reversal of the judgment is, that the court erred in giving instructions 9 to 12, inclusive, on behalf of the People. We have referred to

the fact that defendants were not represented by the same counsel. Allison was the first witness to testify for defendants. It is very apparent from his testimony that he sought to place the theft entirely upon Morville and to show he, himself, was not guilty. He was cross-examined by the State's attorney and further cross-examined by Morville's attorney. Much of the cross-examination by Morville's counsel was objected to. Counsel in their brief say instructions 9, 10, 11 and 12 for the People were offered by Morville, and say they virtually told the jury Allison stole the car and that Morville was not guilty, unless as an accessory. The ninth instruction told the jury that if they believe from the evidence, beyond a reasonable doubt, that Allison stole the car, yet unless they further believe from the evidence Morville did also steal it Morville should be found not guilty. The tenth instruction told the jury that while they might believe from the evidence, beyond reasonable doubt, Allison or someone other than Morville committed the offense, still that would not be evidence that Morville was guilty unless he was present in Macon county and was guilty of stealing the car, or the jury further believed that he stood by, aided, abetted or assisted Allison, or anyone else, in the commission of the crime, or unless they believed from the evidence that Morville, not being present, aided, abetted, assisted or encouraged Allison or someone else in committing the crime. The eleventh instruction advised the jury that before they could find Morville guilty they must find, beyond a reasonable doubt, that he committed the crime as charged. The twelfth instruction told the jury Morville was a competent witness in his own behalf, and his testimony should not be disregarded merely because he was a defendant, and in weighing and determining what credit should be given his testimony the jury should apply the rules of law applicable to any other witness. Plaintiff in error argues these instructions clearly called attention to him and assumed his guilt had been established by the

evidence, and there was no basis for any instruction with regard to an accessory; that defendants were jointly indicted as principals and that it was error to instruct with regard to an accessory, citing *People* v. *Clark,* 301 Ill. 428, as sustaining this argument.

In the case at bar Allison and Morville were indicted jointly as principals. On the trial each of them testified as a witness in his own behalf and each sought to place the guilt on the other. So far as shown by the record, neither defendant nor his counsel knew what the other defendant was going to testify to until each testified on the witness stand. No motion for a separate trial was made and they were tried jointly. After Allison had testified and been cross-examined by the State's attorney Morville's counsel also cross-examined him, and counsel for Allison say Morville's counsel usurped the functions of the prosecutor in his cross-examination, and further say they have been unable to find any case where the circumstances were similar to those on the trial of this case. It is not contended the People knew what the attitude of either defendant was to be on the trial as affecting his guilt or innocence. When Allison testified he clearly sought to throw the blame of guilt on Morville, and when Morville took the stand he returned the compliment. It is, of course, possible in any case where two men are jointly indicted for committing a crime, one of them may be guilty and one of them may not be guilty. They are competent witnesses to testify, and where, as here, each tries to show the other was guilty, and they are represented by different counsel who knew nothing of what the testimony of the other would be until they heard it from the witness stand, we do not think that justice or the law requires that the defendant who claims to be innocent shall not so state on the witness stand but shall submit to or not contradict the statement of the other defendant. We cannot say Morville's counsel did not have a right to cross-examine Allison and attempt to bring out

facts which might weaken or destroy the effect of his testimony, and that Allison's counsel did not have a right to do the same thing with Morville.

It is complained that in one or two of the instructions said to have been given on behalf of Morville the court specifically mentioned Allison's name and in effect assumed he was guilty of stealing the car. We do not think the instructions capable of the construction that the court assumed the guilt of Allison. It would be very difficult to present an instruction of Morville's defense without naming Allison, and the instructions told the jury that if they believed from the evidence, beyond a reasonable doubt, that Allison stole the car, still, unless they further believed Morville was also guilty of stealing it within the limits of Macon county, Morville should be found not guilty, and that if the jury believed from the evidence, beyond a reasonable doubt, Allison or someone other than Morville committed the offense, that would not be evidence that Morville was guilty, unless the jury further believed from the evidence he stood by, aided and abetted Allison or anyone else in the perpetration of the crime. The instructions contain no intimation that the court assumed Allison was guilty. Under the evidence in the case the jury were at liberty, under the instructions, to find that Allison alone was guilty or that he and Morville jointly were guilty. It seems impracticable to present the situation which arose on the trial to the jury to determine whether one, alone, is guilty without naming the other defendant in an instruction. Each defendant placed the blame for the crime on the other and testified he had nothing to do with it. The instructions fairly submitted to the jury the question whether Allison committed the crime or he and Morville jointly.

The instruction on the subject of accessory defines an accessory before the fact, and if the testimony of Morville and his witnesses was believed by the jury to be true he could not have been an accessory before the fact. An ac-

cessory after the fact, of course, could not be convicted as principal, and there was no instruction upon such an accessory. In *People* v. *Clark, supra,* the court held that under the evidence in that case, where the instruction was as to an accessory before the fact, the jury might have concluded from the evidence that Clark was accessory after the fact, in which case he should not have been convicted as a principal. The evidence in that case was entirely different from the evidence in this case, and we do not think that case is authority that the instruction given in this case was erroneous. In the *Clark case* the court said the giving of the instruction as to an accessory was a correct abstract proposition, but under the evidence in that case it was error to give it without pointing out that it defined an accessory before the fact. The case was reversed because there were more serious errors in the record than giving the instruction. In this case, if the part of instruction 10 on the subject of an accessory was not pertinent under the evidence,—and we do not think it was,—it was not prejudicial to Allison and giving it is not reversible error. In our opinion that instruction could not have influenced the jury in determining the guilt or innocence of Allison. There was no error in giving instructions 11 and 12.

It is true, the testimony of each defendant was very injurious to the other, but they created that situation themselves. It was the court's duty to see that neither of them was denied any legal right in presenting his defense and to instruct the jury as to the law. We are of opinion the trial was fairly conducted as to both defendants, and that no error was committed in instructing the jury or in the admission of evidence which would justify a reversal of the judgment, and it is affirmed.    *Judgment affirmed.*