THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELTON VERNER HARTER, Defendant-Appellant.

(No. 71-161; 

Second District—April 11, 1972.

*Rehearing denied May 18, 1972.*

773

Ralph Ruebner, of Defender Project, of Elgin, (Kenneth L. Gillis, of counsel,) for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Elton Verner Harter was charged with delivering a forged check in the amount of $30 with intent to defraud (Ill. Rev. Stat. 1969, ch. 38, par. 17—3.) He was convicted after a jury trial and thereafter sentenced to 3-10 years in the penitentiary.

For reversal, defendant urges that the incompetence of appointed counsel, particularly in the failure to move to suppress evidence, deprived

him of a fair trial; also that he was prejudiced by the court's failure to allot a reasonable fee to obtain a handwriting expert (and by allowing the jury to compare samples of handwriting unaided by expert testimony). He also claims that other trial errors entitle him to a new trial.

The indictment related to the delivery of the check on July 30, 1970. This document was a bank "counter check" in which part of the printed matter was inked out and "Joseph King and Elton Harter" inserted as payees. Defendant testified that King was his employer and that "Adele Mickovitch", the purported maker, gave the check to King in payment for their services, and that King endorsed it.

The challenged evidence consists of two checks which were found in defendant's rear pocket when he was arrested for vagrancy on August 3, 1970.[1] At trial, defendant's counsel objected to the admission of these exhibits on the ground that they introduced unrelated offenses into the trial. The court permitted the evidence solely on the issue of defendant's identification, intent, motive, design and knowledge, and gave a limiting instruction to that effect. The objection urged here is that the record does not establish any probable cause for the arrest on the "vagrancy charge", thus invalidating the search warrant incident to the arrest. The failure to raise the issue is urged as incompetence of counsel.

Neither the vagrancy complaint nor the Rockford ordinance under which it was brought appears in the record. The testimony in the record is, however, that Mr. Baker, who worked at Kona Liquors, on August 3, 1970, was approached in the store by defendant who asked to cash a check; that Baker could not reach the number listed on the check (which he noted was completely filled out), because the line was busy; that he decided not to cash the check; but that a short time later, while he drove a customer home, he saw defendant in back of a different store "writing on something" and when he returned defendant was still writing. He then called the police who made the vagrancy arrest. The officer testified that he asked defendant and his companion whether they had any "payroll"[2] checks and whether they were employed; and that they an-

---

[1] One check was stamped with the payee "Central Illinois Electric and Gas Co." and was otherwise blank (People's Exhibit 2A); the other had "Elton Verner Harter" written over the "Central Illinois" stamp and was otherwise completely filled out, including the signature of "George & Carl Winters Painting Contractor", as maker. We are advised in oral argument that it is customary to furnish the stamped checks for payment of electric bills as a courtesy.

[2] It is impossible to determine the meaning of the reference to "payroll" checks from the record. The check upon which the indictment was based had not been returned from the bank when the arrest was made on August 3rd for vagrancy, and was not a "payroll" check. The check that defendant attempted to cash with Baker was never identified.

swered that they had no payroll checks and were not employed. Defendant admitted that he refused to give the officers his address.

■■ Defendant argues that the vagrancy charge is a mere pretext for an unlawful arrest on mere suspicion. He cites cases, (*e.g. People v. Belcastro* (1934), 356 Ill. 144; *Ricks v. Dist. of Columbia* (D.C. Cir. 1968), 414 F.2d 1097) which have condemned certain vagrancy statutes as unconstitutionally vague. We cannot review the particular statute here involved because it is not before us; and while we cannot conclude that all vagrancy statutes are void, (See Anno. 25 A.L.R.3d 792) we think that the recent decision of the United States Supreme Court in *Papachristou v. City of Jacksonville,* (L.Ed.2d); 40 L.W. 4216, 4218 makes it unlikely that the conduct upon which defendant's arrest was based could be classified as a crime. We also cannot say on the record before us that the search was made on probable cause to suspect the theft or forgery of payroll checks. Under these circumstances, it seems quite clear that the evidence discovered in the search which followed the arrest would have been subject to suppression.

■■■ The question of illegal search and seizure even though pursuant to an illegal arrest will not ordinarily be considered on appeal where not raised in the trial court. (*People v. Washington* (1968), 41 Ill.2d 16, 20, 21; *People v. Adams* (1968), 41 Ill.2d 98, 100, 101; *People v. Green* (1967), 36 Ill.2d 349, 351.) The failure of either retained or appointed counsel to file a motion to suppress evidence has been held insufficient to show incompetency of counsel and to prevent the waiver. (*People v. Washington, supra,* page 21; *People v. Moore* (1969), 43 Ill.2d 102, 106; *People v. Robinson* (1960), 21 Ill.2d 30, 36.) In addition to showing incompetence of counsel, defendant has the additional burden of showing "substantial prejudice resulting therefrom, without which the outcome would probably have been different". *People v. Morris* (1954), 3 Ill.2d 437, 439; *People v. Georgev* (1967), 38 Ill.2d 165, 169.

■■ The State argues that the overall performance of experienced appointed counsel showed competence; and that the failure to move to suppress the checks found on defendant's person did not go directly to the offense for which he was charged and was not a sufficient showing of incompetence of counsel to require a new trial. However, the defendant was charged with delivering a forged check with intent to defraud. The State had to prove that the defendant knew that the purported maker of the check which he delivered, "Adele Mickovitch", was nonexistent. There was evidence that the purported maker had no account in the bank on which the check was drawn and that no one by that name could be located in the area. There was testimony by State's witnesses also that King could not be found. The defendant claimed both King and Micko-

vitch existed and that his counsel had not made sufficient effort to locate them. It appears that People's Exhibits 2A and 3A were intended by the State and did provide the evidence of common design and intent which would impeach the defendant's defense, and there was obvious prejudice to the defendant in admitting the exhibits. Without the evidence of the checks found on defendant's person, the evidence against the defendant was far from conclusive. Jules Petit, the owner of the Rainbow Tap, testified for the State that he cashed the check. He had cashed other checks for Elton. He asked the defendant if the check was any good because he did not know the other payee's name. Petit testified that the defendant could have said, if the check wasn't any good he could call out to defendant's dad and he would come down and pick it up; that he knew there was a possibility that the check was not good but that, from the conversation, he could look to Harter to make it good. He made no complaint to the police.

■■ From our examination of the entire record, we conclude that defendant was deprived of substantial rights and should receive a new trial. The failure to move to suppress Exhibits 2A and 3A cannot be fairly viewed as a matter of judgment or trial strategy.

In addition, there were other trial errors which taken alone would not be grounds for reversal. But they do cast doubt on the fairness of the entire proceeding, and as to these, we are reluctant to consider counsel's failure to object as a waiver on the total record.

■■ For example, samples of defendant's writings were taken from him while in custody, consisting of his own signature (Plaintiff's Exhibit 4B) and his writing of "George and Carl Winters" (Plaintiff's Exhibit 4A). These were admitted without objection. While the record does not show whether the Exhibits actually went to the jury, it is a fair assumption that they did. The trier of the facts, whether court or jury, may determine the genuineness of disputed handwriting specimens by comparison and without the benefit of expert opinion. However, the comparison must, in the first instance, be made in open court in the presence of the defendant, and the record does not show that this procedure was followed. (*People v. Clark* (1922), 301 Ill. 428, 433, 434; Ill. Rev. Stat. 1961, ch. 51, par. 50-52.) It has been held to be error for such samples of handwriting to be taken to the jury room. *People v. White* (1937), 365 Ill. 499, 513; *People v. McElroy* (1965), 63 Ill.App.2d 403, 415.

The defendant, although indigent, was refused fees to secure a handwriting expert. He claims that the refusal deprived him of an essential defense and was error within the ruling of *People v. Watson* (1966), 36 Ill.2d 228, 234. The court reasoned that defendant was charged with the delivery and not the making of the check and that, therefore, proof that

he did not write the check would not be proof that he did not knowingly deliver a fraudulent document to Petit. However, evidence to prove that defendant knew the check to be forged necessarily relied on the circumstance that defendant was seen writing on documents in the alley; and the comparison of the signature of "George and Carl Winters" on the check found in his possession with his own signature was obviously to create the inference that the defendant wrote the maker's name on the Winters check, (with the further inference that he probably also knew that Adele Mickovitch, the maker on the indictment check, was also fictitious since she could not be located). As the case developed, we think that the handwriting of defendant became a crucial issue in the case. Since we cannot anticipate the posture of the case on retrial, it will be necessary for the court to determine on the basis of the showing made before him whether the defendant's handwriting remains a crucial issue in the new trial.

■■ The cross-examination of defendant as to his prior felony record, without introduction of the transcript, was error but not in itself reversible error since the transcript was offered in rebuttal. (See *People v. Bennett* (1953), 413 Ill. 601, 605, 606; *People v. Moses* (1957), 11 Ill.2d 84, 88.) The error, however, is not likely to occur on retrial.

■■ All of the instructions are designated "People's" Instructions. Defendant has contended that it was error to give an instruction on the limited effect of proof of the prior conviction (I.P.I. Criminal 3.13) because he did not request it. He relies upon the Committee Comments and also cites *People v. Gibson* (1971), (Ill.App.3d), 272 N.E.2d 274, 277. We agree that the prosecutor should not have the right to insist on the instruction and that it is the defendant who should decide whether the instruction is to his benefit or whether it would further accentuate a past criminal record. The fact that the instruction was tendered by the State is not the material question. The defendant had the right to object to the instruction. When he did not do so, the court could exercise its supervisory power over the trial and determine whether the instruction or its refusal would best protect the defendant. We find no error in this regard.

The judgment below is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

GUILD and DOUGLAS, JJ., concur.