THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WADE L. SPENCER, Defendant-Appellant.

(Nos. 55252, 55448 cons.; ▮▮▮▮▮▮▮▮▮▮)

First District—September 29, 1972.

Leonard B. Miller, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and John O'Rourke, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant was found guilty of armed robbery and aggravated battery after a jury trial and was sentenced to a term of not less than two nor more than eight years. Defendant had been indicted and charged with the offenses of armed robbery, aggravated battery and attempted murder for an incident that occurred on September 3, 1969, at 2:55 A.M. He was also indicted for armed robbery and aggravated battery for an incident that occurred at 7:30 P.M. on September 3, 1969. However, he was brought to trial and convicted only under the first indictment. He was never tried on the second indictment.

On appeal it is contended that: (1) an occurrence witness's in-court identification was not based on a sufficient independent origin; (2) testimony concerning a subsequent offense was inadmissible at the trial; (3) the trial judge violated the defendant's right to a fair trial by failing to disqualify himself from hearing the case; and (4) defendant was not proven guilty beyond a reasonable doubt.

The pertinent facts for this appeal are as follows:

Richard Rae, a bus driver for the Chicago Transit Authority (hereinafter referred to as "C.T.A.") testified that he was driving a bus west on Division Street in Chicago, Illinois, at approximately 2:55 A.M. on September 3, 1969. He stopped at the corner of Division and Cleveland Streets to pick up two male Negroes. One of these men stayed at the doorway, and the other approached Mr. Rae and without warning stabbed him a total of eight times. Rae managed to stand up, push past his attackers, jump out the front door of the bus and get away from the immediate area of the bus. When he returned approximately five minutes later in the company of the police, his money changer was missing. Rae stated that the changer had contained $12.90. Rae made a positive in-court identification of the defendant as his assailant. This identification was based on Rae's direct observation of defendant at the time of the incident. He stated that the lighting on the bus was good at the time of the attack, that he observed the defendant's face for approximately thirty seconds at a distance of about one foot.

At 7:30 P.M. on September 3, 1969, another C.T.A. bus driver, Nabreil Fareed, was attacked and robbed within four blocks of the location of the attack and robbery of Richard Rae. This second incident at the corner of Scott and Larabee Streets occurred seventeen and one-half hours after the attack on Rae. Two C.T.A. police officers, Billy Butler and Harry Laatsch, observed two men running from Nabreil Fareed's bus. They gave chase into an alley to a point where the alley split in

two different directions. When the two suspects split, the officers each continued in pursuit of one man. Officer Butler testified that he never lost sight of the man he was chasing and eventually overtook him. This man was the defendant Wade Spencer.

Richard Walker, an employee of the Harris Trust and Savings Bank in Chicago, testified that he was riding on the bus driven by Nabreil Fareed at the time of the robbery. When Officer Butler returned to the bus with the defendant in custody, Mr. Walker told Butler that the defendant had not been on the bus. He stated that he was in clear view of Fareed and had an opportunity to observe the profile and clothing of the assailant, that he did not see a weapon in the robber's hands and that the defendant was not the same boy he had observed on the bus attempting the robbery.

The defendant testified in his own behalf. He denied that he had robbed and stabbed Richard Rae at 2:55 A.M. because he was home asleep at that time. Defendant's mother and sister testified and corroborated his claim that he was asleep at home at that time. Defendant also denied the attack on Fareed. He stated that he had played basketball at Stanton Park with friends on the evening of September 3, 1969, and had left the basketball courts at approximately 7:30 P.M. to go home. As he cut through an area of abandoned buildings, he was arrested by Officer Butler. Two boys who stated that they had been playing basketball with the defendant until 7:30 P.M. testified as alibi witnesses for his whereabouts at the time of the robbery of Fareed.

OPINION

First, defendant maintains that Richard Rae's prior observation of defendant was insufficient to serve as an independent origin for the in-court identification when a line-up identification had been suppressed. In such cases where a line-up or other confrontation is held improper or has been suppressed, the in-court identification is nevertheless admissible if it is to have had a prior independent origin. (*People v. Mc-Math* (1968), 104 Ill.App.2d 302, 313, 244 N.E.2d 330, 335, affirmed 45 Ill.2d 33, *cert.* denied, 400 U.S. 846.) Herein, Richard Rae had a clear view of his assailant in a lighted bus at a well lighted intersection. His assailant was standing within a foot or two of him for approximately thirty seconds. Further, Rae's general physical description given shortly after the attack matched that of defendant. These facts disclose a sufficiently independent and uninfluenced source to stand as the basis for the in-court identification. Hence, the trial judge properly allowed the admission of this evidence.

Defendant contends it was reversible error for the trial court to allow the testimony of Billy Butler concerning a subsequent offense as it was

in no way corroborative of the testimony of Richard Rae, it had no probative value in the case at bar, and was highly prejudicial to defendant. Officer Butler was not a witness to or involved in any way with the attack against Rae at 2:55 A.M. on September 3, 1969. Butler's involvement began more than 17 hours after this offense when he arrested defendant for the robbery of Nabreil Fareed. It is urged that there was an insufficient basis to connect the two offenses. Defendant maintains that, since these offenses were separate and distinct, evidence of the latter should have been excluded.

■■ The general rule is that evidence of the commission of other crimes by an accused in support of the crime charged is inadmissible, as well as sufficiently prejudicial to constitute reversible error. (*People v. Gleason* (1962), 36 Ill.App.2d 15, 16, 183 N.E.2d 523, 524.) However, there are several recognized exceptions to this general rule. The test of admissibility of evidence of another offense is whether it fairly tends to prove the offense charged. Hence, an exception to the general exclusionary rule exists where evidence of another offense works to place defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or knowledge. The rationale for this exception is that such evidence is so closely connected with the main issue in the case at bar that it tends to prove the accused guilty of the crime charged. *People v. Tranowski* (1960), 20 Ill.2d 11, 16, 169 N.E.2d 347, 349.

The State relies on this exception to sustain the conviction in the instant case by submitting that evidence of the subsequent crime tended to establish a proximity as to time and place, as well as a common design or system. The facts of each case must be examined to determine whether the evidence of another crime is sufficiently relevant to prove the accused guilty of the offense for which he is being tried. Our review of the record in this case leads us to conclude that the testimony of the C.T.A. policeman was improperly admitted.

■■ The time between the two offenses in issue was approximately seventeen and one-half hours. The first offense occurred in the early hours of the morning and the other in the early evening. The offenses occurred several blocks apart from each other on separate C.T.A. bus routes. The State argues that this fact pattern clearly falls within the exception of "proximity to the time and place" set out in *People v. Tranowski* (1960), 20 Ill.2d 11, 16, 169 N.E.2d 347, 349. We do not agree. For example, the fact situation presented in the *Tranowski* case is strikingly different from the instant case. In *Tranowski* it was established that three robberies, two attempted robberies and one robbery-killing occurred within an area of approximately three blocks within less than 45 minutes. When the defendant in that case was tried on one of

the robbery charges, evidence of the other robberies and the killing was admitted. In upholding the trial court, our Supreme Court found that the proximity of time and place of all these other crimes were so closely connected that they tended to prove the defendant guilty of the crime charged. Similarly, this Court allowed evidence of a separate occurrence to stand where an independent observation was made by a witness approximately 45 minutes subsequent to a robbery charged in *People v. Brown* (1966), 76 Ill.App.2d 362, 222 N.E.2d 227. In *Brown*, the accused was charged with participating in the robbery of a man in a C.T.A. elevated train. This Court upheld the admission of testimony of a C.T.A. policeman to the effect that he saw the accused and others holding another man down on the seat of an elevated train and going through his pockets about 45 minutes subsequent to the robbery charged. This subsequent occurrence was on the same train line and within two stops of the first robbery. (See also *People v. Norfleet* (1972), 4 Ill.App.3d 758, 281 N.E.2d 761.) The two separate occurrences in the instant cases were not, in our opinion, related in such a way as to place them within the "proximity of time and place" exception set out above. The fact that they occurred more than seventeen hours apart, on separate bus lines and several blocks apart in a high crime rate area vitiates the time and place exception to the general exclusionary rule.

Nor do we find that criminal design and common scheme are sufficiently proven to bring this case within the *Tranowski* principle. The State specifically relies on *Tranowski* to place the instant case within the common scheme exception. In *Tranowski*, as noted above, six robberies were attempted within 45 minutes. Three victims gave positive identifications of the robber. Four of the victims gave similar descriptions of the clothing worn by their assailant, and all testified that he was carrying a revolver. Most importantly, the time sequence of the six crimes occurred in rapid succession. We also take note of another case decided by our Supreme Court concerning the issue of common design. (See *People v. Armstrong* (1968), 41 Ill.2d 390, 243 N.E.2d 825.) In that case, evidence of a common scheme was held admissible where robberies of three taverns by the same three men using a shotgun occurred within 45 minutes of one another.

■■ We cannot conclude that the facts in the instant case come within the meaning and intent of the common scheme or design exception. In addition to the rather substantial difference in time and the difference in location, the State did not clearly demonstrate that the subsequent offense was committed in a similar manner to the offense charged. Concededly, a C.T.A. bus robbery was involved in both instances. However, there are conflicts beginning at this point. For example, Richard Rae testified

that the number of men involved in the first robbery was two. Although Officer Billy Butler testified that two men ran from the second bus, the eyewitness Richard Walker testified that there was only one man and that the robber was not the defendant. In addition, Rae testified to the existence of a weapon. Richard Walker testified that he saw no weapon in the hands of the robber in the second occurrence; nor did the State offer evidence that the second driver, Fareed, was in fact stabbed or cut. These and other conflicts in evidence, as well as the time span, have the effect of not sufficiently connecting the two offenses.

■■ Defendant also contends that the trial judge violated his right to a fair trial by failing to disqualify himself from hearing the case. This contention is based on extrinsic argument to the effect that the trial judge had at one time been employed as an attorney for the C.T.A.. We find no merit in this contention. This alleged error was neither raised at the trial nor in a post-trial motion and therefore may not be raised on appeal. Furthermore, our review of the entire record of proceedings in no way discloses any prejudice to defendant on the part of the trial judge.

■■ Finally, defendant argues that he was not proven guilty beyond a reasonable doubt. We cannot say that the validity adduced evidence at trial is so unsatisfactory as to raise a reasonable doubt. However, the introduction of evidence concerning the subsequent offense cannot be considered harmless error. The test of whether error is harmless is not whether there is other evidence sufficient to prove guilt. (*People v. Smith* (1967), 38 Ill.2d 13, 17, 230 N.E.2d 188, 191.) The introduction of evidence concerning the subsequent offense was capable of leaving a highly prejudicial effect on the minds of the jurors. We cannot say beyond a reasonable doubt that the introduction of this evidence did not contribute to the verdict. Accordingly, defendant is entitled to a new trial free from such evidence.

Reversed and remanded.

DRUCKER and ENGLISH, JJ., concur.