THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL MILLER, Defendant-Appellant.

(No. 73-267; ■■■■■■

Fifth District—November 20, 1974.

Robert E. Farrell and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro, and John T. Bowman and Gary T. Miller, Senior Law Students, of Carbondale, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Earl Miller, from a judgment entered, on a jury verdict, by the circuit court of Jackson County against him for the offense of deceptive practice and the imposition of a sentence of one year with the department of corrections.

The information charging the defendant with deceptive practice only alleged that he had been involved with the delivery of 1 check, a check for $99.17 drawn on the Carterville State and Savings Bank. This check was designated as people's exhibit no. 2. Due to the fact that we are confronted with issues involving the admissibility of certain evidence and the sufficiency of the evidence it becomes necessary to examine the evidence presented in the trial court.

The State's first witness, Herbert Odum, testified that he and his son, Ronald Odum, were partners in a Lafayette Radio Store located in Carbondale, that he saw the defendant in the store, around 3 P.M. (on

February 8, 1973), with a young man represented to be defendant's son-in-law, that he did not wait on the defendant, but did examine a check (People's exhibit 1), which was accepted in return for a "Walkie-Talkie", that pursuant to his son's request the defendant supplied his social security number and the defendant's "son-in-law" supplied his driver's license number which were written on the check, and that the defendant left the store with the "Walkie-Talkie," which was eventually returned by the police. The witness further testified that the check (people's exhibit 1) was presented for payment and that it was subsequently returned with a notation that no such account existed, that about 5:30 P.M. (February 8, 1974) the defendant called the store on the telephone and talked to the witness' wife, Rosemary Odum, "saying that he was going to send his son-in-law back in,"[1] that the young man, purported to be defendant's "son-in-law," returned to the store with a check with defendant's signature on it; that either the witness' son or wife handled this transaction, that he saw his wife fill in "Lafayette" on that check (people's exhibit 2), that the check (people's exhibit 2) was tendered in exchange for another "Walkie-Talkie," and that no payment was received as the check (people's exhibit 2) was also returned marked no such account. On cross-examination the witness stated that his wife filled in the words "Lafayette Radio" and he was "pretty sure" that she filled in the amount of the second check, and that the check (people's exhibit 2) was signed with the defendant's name before it was brought into the store; however, he stated that he did not "know for a fact" that the defendant signed the second check (people's exhibit 2).

The next witness called by the State, Rosemary Odum, testified that she helped her husband at Lafayette Radio, that she saw the defendant and a younger boy enter the store on February 8, 1973, around 4 P.M. and buy a walkie-talkie, that payment for the walkie-talkie was in the form of a check (people's exhibit 1), that she saw the defendant hand over the check (people's exhibit 1), that she received a telephone call from the defendant, who said he would send the "boy" in to pick up another walkie-talkie, that the defendant said "he would sign the check and send the boy for it," and that she filled out the words "Lafayette Radio" and the amount on the check (people's exhibit 2), which was signed when she received it. On cross-examination the witness testified that she was not positive that the person she had talked to on the tele-

---

[1] Subsequently, the testimony regarding the telephone conversation between the witness's wife and the defendant was objected to, and sustained, as hearsay. At that time, the trial court instructed the jury to disregard "anything that was heard between the wife of the witness and the defendant."

phone was the defendant, that she did not fill in the words "Lafayette Radio," but that she did fill in the amounts on the second check (people's exhibit 2), that she did not see the defendant put his name on the check (people's exhibit 2), and that she did not see the first check signed (people's exhibit 1).

The State then called Ronald Odum, who testified that he was a partner in the Lafayette Store, that the defendant came into the store with a younger boy about 10 A.M., looked at walkie-talkies, and returned abut 1 or 2 P.M. and purchased a walkie-talkie, that the defendant filled in all portions of the check (people's exhibit 1), that he believed that the defendant removed a single check from his pocket, that the only identification that the defendant had was his social security card which he, the witness, "took down" together with the number from the driver's license of the younger man who accompanied the defendant, that the defendant left the store with the merchandise, and that he, the witness, was not present when the second set was sold. On cross-examination the witness testified that he watched the defendant fill out the check (people's exhibit 1), that the witness had selected the defendant's picture from a group of photographs shown to him by the police, and that he had nothing to do with the second check.

The last State's witness was Lloyd C. Henderson, a vice-president of the Carterville State and Savings Bank. He identified people's exhibits one and two as counter checks from his bank. He testified that the checks were presented for payment but were not honored because the account number on the checks did not exist and the checking account record revealed no depositor by the name of Earl Miller. On cross-examination the witness testified that he did not know who signed the check (people's exhibit 2).

The State rested, and the trial court recessed. When the court reconvened the State moved to reopen the case to admit people's exhibits nos. 1 and 2 into evidence. The defense objected, but was overruled. The defense objected to exhibit no. 1, as not being "of a probative nature as to whether or not the second check (which was of the amount charged in the information) was illegally and criminally issued and passed by this defendant." No objection was made to people's exhibit no. 2. The trial court overruled the defense counsel's objection to people's exhibit no. 1 and submitted both exhibits (people's exhibits 1 and 2) into evidence. The State than again rested.

Thereafter defense counsel made a motion for a directed verdict on the ground that there was no proof that the defendant issued the check (people's exhibit 2) described in the information. Defense counsel further alleged that it was improper to use the first check (people's exhibit 1)

as a vehicle of tying the defendant to the second check (people's exhibit 2). After the State's argument in rebuttal, the trial court denied the motion. The defendant rested without presenting any evidence.

In this appeal defendant raised three issues: first, that the trial court erred in allowing the jury to take people's exhibits nos. 1 and 2 into the jury room, secondly, that people's exhibit no. 1 was erroneously admitted, and lastly, that the trial court erred in denying defendant's motion for a directed verdict at the close of the State's case. Due to the interrelationship of these contentions we will address ourselves first to the admissibility of people's exhibit no. 1.

The defendant contends that people's exhibit no. 1 evidenced the commission of another crime and, therefore, its relevancy "was completely outweighed by the prejudicial effect it had on the jury in view of the State's total failure to present any direct and concrete evidence linking the defendant with the alleged passage of the second check." The defendant cites two cases, *People v. Cage*, 34 Ill.2d 530, 216 N.E.2d 805, and *People v. Spencer*, 7 Ill.App.3d 1017, 288 N.E.2d 612, in support of the above proposition. In each of the cited cases the respective court made three determinations: (1) that as a general rule evidence of other crimes is inadmissible to prove that a defendant committed the crime for which he is being tried, (2) that such evidence may, however, be admitted when its relevancy in placing the defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected to the main issue as to justify admission, and (3) due to the facts there present the probative value was minimal in establishing any of the elements which would remove it from the exclusionary rule. As stated in *People v. Spencer*, 7 Ill.App.3d 1017, 1021, 288 N.E.2d 612, 615:

"The facts of each case must be examined to determine whether the evidence * * * is sufficiently relevant to prove the accused guilty of the offense for which he is being tried."

■■ Our review of the record in this case leads us to conclude that people's exhibit no. 1 is so closely connected to the main issue as to outweigh its prejudicial effect and justify its admission into evidence. In the instant case the evidence of another crime, people's exhibit no. 1, placed the defendant in the proximity to the time (February 8, 1973) and place (the Lafayette Radio Store) of the crime for which he was being tried, aided in establishing the identity of the defendant by (1) comparison of the handwriting on the two checks (people's exhibits 1 and 2) and (2) connecting the defendant with the party who passed the second check (people's exhibit 2), and tended to show defendant's knowledge of the delivery of the second check (people's exhibit 2) by

the fact that the checks were (1) both signed in defendant's name, (2) consecutively numbered, (3) drawn on the same numbered account at the same bank, and (4) passed at the same location. We, therefore, hold that people's exhibit no. 1 was properly admitted into evidence by the trial court.

■■ The defendant's contention that the trial court erred in denying his motion for a directed verdict was directly premised upon the inadmissibility of people's exhibit no. 1. Having already determined the admissibility of people's exhibit no. 1, we will address ourselves to the issue of whether the evidence presented by the State was sufficient to sustain a verdict of guilty. In *People v. Bernette*, 30 Ill.2d 359, 367, 197 N.E.2d 436, 441, our supreme court stated:

> "* * * a conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell*, 17 Ill.2d 328, [161 N.E.2d 309]) it being necessary only that the proof of circumstances must be of a conclusive nature and tenancy leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Magnafichi*, 9 Ill.2d 169, [137 N.E.2d 256]; *People v. Grizzel*, 382 Ill. 11, [46 N.E.2d 78].) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt."

The foregoing was quoted and relied upon in *People v. Marino*, 44 Ill.2d 562, 256 N.E.2d 770. See also *People v. Helm*, 10 Ill.App.3d 643, 295 N.E.2d 78; *People v. Holt*, 7 Ill.App.3d 646, 288 N.E.2d 245.

■■ From our review of the entire record, which includes people's exhibits nos. 1 and 2, we find that the circumstantial evidence presented in the trial court was of a sufficiently conclusive nature and tendancy to sustain a verdict of guilty. It is within the peculiar province of the jury to weigh the evidence and determine the facts and unless that decision is so contrary to the evidence—so unreasonable, improbable or unsatisfactory so that we have reasonable doubt—the decision of the jury will not be disturbed. (*People v. Smith*, 5 Ill.App.3d 648, 283 N.E.2d 727.) Consequently, we hold that the trial court did not err in overruling the defendant's motion for a directed verdict.

The final contention to which the defendant directs our attention concerns the propriety of the jury taking exhibits nos. 1 and 2 into the jury room during their deliberations. The defendant concedes that a jury in a criminal trial is competent to make handwriting comparisons (Ill.

Rev. Stat. 1971, ch. 51, par. 50; *People v. Clark,* 301 Ill. 428, 134 N.E. 95); however, he contends that it is reversible error to allow the jury to engage in a handwriting comparison for the first time in the jury room (*People v. White,* 365 Ill. 499, 6 N.E.2d 1015; *People v. McElroy,* 63 Ill.App.2d 403, 211 N.E.2d 444; *People v. Harter,* 4 Ill.App.3d 772, 282 N.E.2d 10).

In *People v. White,* 365 Ill. 499, 6 N.E.2d 1015, our supreme court held that it was prejudicial error to allow the jury to take exemplars of handwriting into the jury room for comparison. In *White* the exemplars were taken to the jury room over the objection of defense counsel. It is interesting to note, however, that the supreme court in *White* refused to entertain the defendant's claim that interrogation of the jurors, by a witness, after a demonstration was improper on appeal since the defendant had not "properly preserved the alleged error for review." (*People v. White,* 365 Ill. 499, 511.) In *People v. McElroy,* 63 Ill.App.2d 403, 211 N.E.2d 444, the appellate court held that the trial court did not *abuse its discretion* in denying the defendant's motion to permit the jury to take exhibits into the jury room. In *People v. Harter,* 4 Ill.App.3d 772, 282 N.E.2d 10, the appellate court was confronted with the defendant's allegation that his trial counsel was incompetent. The court concluded that the defendant was deprived of substantial rights and should be granted a new trial. Thereafter the court noted that there were other trial errors which taken alone would *not* be grounds for reversal. It was subsequent to this qualifying statement that the court held that it was error to allow samples of handwriting to be taken to the jury room.

The defendant has not called our attention to any case which has reversed on the ground that an exhibit was improperly taken into the jury room where the defense counsel has not objected to the introduced exhibits being taken to the jury room in the trial court. On the other hand, the State cites *People v. Allen,* 17 Ill.2d 55, 160 N.E.2d 818, for the proposition that a defendant must object at the proper time to preserve for review questions concerninug the taking of physical evidence into the jury room. In *People v. Allen,* our supreme court stated:

> "Defendant objected at the trial to taking the screw driver into the jury room but raised no objection to sending the other exhibits in with the jury. The alleged error in taking in the other exhibits is therefore waived." (17 Ill.App.2d 55, 62, 160 N.E.2d 818, 823.)

See also *People v. Dixon,* 75 Ill.App.2d 77, 221 N.E.2d 35.

■■ In the instant case there was no objection to the taking of people's exhibits into the jury room, in fact, reference was made to this possibility in the closing argument and a "word of warning" was added about the

jury's examination of the two exhibits: Failure to properly preserve the alleged error for review precludes the defendant from raising this issue on appeal.

In accordance with the foregoing conclusions we affirm the judgment entered by the circuit court of Jackson County against the defendant for deceptive practice.

Judgment affirmed.

G. MORAN, P. J., and CARTER, J., concur.